720 A.2d 17

ARMIGER VOLUNTEER FIRE COMPANY, INC.

v.

Gertrude M. WOOMER, et al.

No. 1931, Sept. Term, 1997.

Court of Special Appeals of Maryland.

Nov. 5, 1998.

Michele Dane Jaklitsch, Senior Asst. County Atty. (Phillip F. Scheibe, County Atty., on the brief), Annapolis, for Appellant.

Paul J. Weber (Hyatt, Peters & Weber, P.A., Annapolis and Charles E. Tufts, Pasadena, on the brief), for Appellees.

Argued before HOLLANDER, BYRNES and ADKINS, JJ.

BYRNES, Judge.

Appellant Armiger Volunteer Fire Company, Inc. ("Armiger") appeals from the entry of a default judgment for $195,-158.66 against it and in favor of Gertrude M. Woomer and Martin Woomer, appellees, by the Circuit Court for Anne Arundel County. Armiger presents the following question for review, which we have reframed:

Did the lower court err in granting a judgment by default when it did not first ascertain that the clerk of court had mailed the notice of order of default to Armiger's last known address, as provided in the request for order of default?

We answer this question in the affirmative. Accordingly, we vacate the judgment and remand the case to the circuit court for further proceedings consistent with this opinion.

## FACTS

On July 13, 1993, Gertrude M. Woomer was visiting the Armiger Volunteer Fire Company, Inc. at 8100 Solley Road, in Pasadena, Maryland, to make a presentation to its Board of Directors on behalf of the Armiger Volunteer Fire Company Auxiliary. As Mrs. Woomer was leaving the building, she slipped and fell, sustaining serious physical injuries.

Almost three years later, on April 10, 1996, Mrs. Woomer and her husband sued Armiger in the Circuit Court for Anne Arundel County, alleging negligence.[1] When the suit was filed, Armiger did not have a resident agent to accept service of process.[2] For that reason, Mr. and Mrs. Woomer effected substituted service on Armiger, in accordance with Md. Rule 2–124(m), by serving the complaint and a summons upon the State Department of Assessments and Taxation ("SDAT"), in Baltimore.[3]

---

1. Mr. and Mrs. Woomer also sued C & W Contractors, which had been performing construction work on the Armiger premises at the time of Mrs. Woomer's injury. They subsequently dismissed their claim against that defendant voluntarily, with prejudice.

2. Armiger's resident agent had resigned effective February 5, 1993 and had not been replaced.

3. Md. Rule 2–124(m) provides:

 *Substituted service upon State Department of Assessments and Taxation.* Service may be made upon a corporation, limited partnership, limited liability partnership, limited liability company, or other entity required by statute of this State to have a resident agent by serving two copies of the summons, complaint, and all other papers filed with it, together with the requisite fee, upon the State Department of Assessments and Taxation if (i) the entity has no resident agent; (ii) the resident agent is dead or is no longer at the address for service of process maintained with the State Department of Assessments and Taxation; or (iii) two good faith attempts on separate days to serve the resident agent have failed.

For reasons that are not explained by the record, the caption of the Woomers' complaint does not state an address for Armiger and does not state that Armiger's address is unknown, contrary to the requirement of Md. Rule 1–301(a).[4] Instead, the case caption merely lists Armiger's name followed by "Serve on: State Department of Assessments and Taxation," with the SDAT's Baltimore address.

The SDAT admitted service of process of the complaint on April 22, 1996. On April 26, 1996, SDAT representatives sent the complaint and summons, together with a "notice of service of process," by certified mail, return receipt requested, to Armiger, at 304 Mountain Road, Post Office Box 264, Pasadena, Maryland 21122.[5] Four days later, the receipt was returned to the SDAT marked "Return to Sender, Unclaimed." The postal service attempted delivery again on May 5, 1996. The receipt was returned a second time, marked "Unclaimed."

On May 31, 1996, Mr. and Mrs. Woomer filed a request for entry of order of default, under Md. Rule 2–613(b).[6] Their request included a statement giving Armiger's last known address as 304 Mountain Road, Pasadena, Maryland 21122.[7]

---

4. Md. Rule 1–301(a) provides, in pertinent part:
 *Caption and titling.* [ ... ] An original pleading shall contain the names and addresses, including the zip code, of all parties to the action if the names and addresses are known to the person filing the pleading. If the address of a party is unknown, the pleading shall so state ...
 An " '[o]riginal pleading' means the first pleading filed in an action ..." Md. Rule 1–202(g).

5. Armiger has never contested the accuracy of that address.

6. In 1996, Md. Rule 2–613 was amended to add present subsection (a), which sets forth the "parties" to whom the rule applies. The remaining subsections were redesignated accordingly, without substantive change. The pertinent events in this case occurred before and after the 1996 amendment to the Rule. For clarity and consistency, we will refer to all of the subsections of Md. Rule 2–613 by their present post–1996 amendment designations.

7. The post office box number was not included. Armiger has not argued that that omission made the last known address as provided in the request for entry of order of default incorrect.

The court granted the Woomers' request on June 24, 1996. On June 27, 1996, the order of default was entered on the docket. The docket also reflects an entry for that day stating "Notice of Default Order Issued" to "Defendant 001," which is Armiger. The notice of default order in the record gives the case caption and name and states:

> To: ARMIGER VOLUNTEER FIRE COMPANY INC
> SDAT, ATTN ROBERT CIERKES
> CHARTER ROOM 809
> 301 W. PRESTON STREET
> BALTIMORE, MD 21201

> You are hereby notified that an Order of Default has been entered against you in the above entitled case on 6/27/96.

> You may move to vacate the Order of Default with (30) Days of the date of entry. The motion shall state the reasons for the failure to plead and the legal and factual basis for the defense to the claim.

The notice of default order is a computer-generated form that bears the computer-encrypted signature of the Clerk of the Circuit Court.

On August 2, 1996, Mr. and Mrs. Woomer filed a request for entry of judgment by default, under Md. Rule 2–613(e). The court did not act on that request for six months. On February 5, 1997, the chambers judge prepared a "blue note" to the court case file in which he commented that neither the request for entry of judgment by default nor the proposed order for judgment by default bears Armiger's last known address.[8] Apparently in response to the "blue note," Mr. and Mrs. Woomer filed an amended request for entry of judgment by default and a second proposed order. The amended request and the new proposed order are identical to those that had been filed previously, however. Neither the initial request, the amended request, nor the proposed order lists Armiger's last known address.

---

8. For reasons that are not clear, that "blue note" was not docketed until April 2, 1997.

On April 14, 1997, another chambers judge placed a "blue note" in the court case file directing that the case be set in before him for an inquisition on damages. The clerk's office issued a notice of hearing on damages, which lists Armiger on the proof of service form and gives its address as the SDAT. The record contains nothing to indicate that the SDAT forwarded the hearing notice to Armiger.

On June 12, 1997, the inquisition on damages took place. Armiger did not appear. On June 24, 1997, the court assessed damages in the amount of $195,158.66 and the clerk entered a judgment by default in favor of the Woomers for that amount.[9]

On July 11, 1997, Armiger filed a motion to revise judgment and a motion to strike judgment.[10] Three days later, it filed a notice of appeal.[11] Mr. and Mrs. Woomer filed oppositions to the post-judgment motions, together with exhibits and affidavits by Mrs. Woomer and by the Woomers' attorney. The court scheduled a hearing on all open motions for December 3, 1997, which it later reset for December 23, 1997.[12] On December 19, 1997, counsel for Armiger notified the lower court in writing that it had elected to pursue its appeal and was withdrawing its post-judgment motions.

---

9. The court assessed damages as follows: $16,658.66 for past medical expenses; $18,500.00 for future medical expenses; $10,000.00 for loss of consortium; and $150,000.00 for non-economic pain and suffering.

10. There is nothing in the record to indicate that Armiger was notified of the judgment against it. At oral argument, counsel for Armiger informed the court, and counsel for Mr. and Mrs. Woomer acknowledged, that a notice of entry of judgment was sent to the SDAT, which in turn sent it to Armiger. It was at that point that Armiger learned of the suit and the judgment. The judgment itself was entered against the SDAT, not against Armiger.

11. The date stamps appearing in the record show that Armiger actually filed its notice of appeal, motion to strike the judgment by default, and motion to revise the judgment simultaneously, on July 11, 1997. The clerk of court delayed docketing Armiger's notice of appeal for three days, however, pending payment of the required filing fee.

12. In the meantime, on November 13, 1997, the parties entered into a consent agreement staying execution on the default judgment pending the resolution of all post-judgment motions and appeals.

Finally, on December 23, 1997, Mr. and Mrs. Woomer supplemented their oppositions to the withdrawn post-judgment motions with an affidavit by Mardonna Tyler, a clerk in the civil department of the Clerk's Office of the Circuit Court for Anne Arundel County. Ms. Tyler attested (1) that she wrote the 6/27/97 docket entry stating: "ORDER OF COURT ORDER OF DEFAULT AS TO ARMIGER VOLUNTEER FIRE COMPANY, INC. GRANTED. (COPY TO ATTY TUFTS AND ARMIGER VOLUNTEER FIRE CO.) Notice of Default Order Issued. DE 001[;]" (2) that she has no specific recollection of making that docket entry; (3) that the procedure of the clerk's office is to mail a notice of default order "to the defendant and the defendant's attorney of record, if any[;]" and (4) that it has been her "regular procedure" for eight years to mail any such notice of default order to the address stated in the request for order of default and to the defendant's attorney of record, if any, and that she would have followed that procedure in this case.

Additional facts will be recited as necessary to our discussion of the issues.

## DISCUSSION

Armiger contends that the trial court erred by granting judgment by default in violation of Md. Rule 2–613(f). Specifically, it argues that because the court took no action to satisfy itself that the clerk's office mailed the notice of order of default to its last known address, as required by Md. Rule 2–613(c), and because there is nothing in the case file, including the docket entries, from which the court could have concluded that the mailing was made to its last known address, the court entered the judgment improperly.

Mr. and Mrs. Woomer counter with two arguments. First, if the clerk made a mistake by mailing the notice to the SDAT instead of to Armiger's last known address, that "irregularity" could have been corrected by the trial court through the exercise of its revisory powers; by withdrawing its post-judgment motions, Armiger waived its right to have that

irregularity corrected. Moreover, Armiger could not have proven by "clear and convincing evidence" that such an irregularity occurred in any event. Second, and alternatively, the clerk's office complied with Md. Rule 2–613(c) by mailing the notice of order of default to the SDAT.

### (i)

Default judgments are governed by Maryland Rule 2–613. Subsection (b) of that rule provides that if a defendant fails to plead within the time required for doing so, "the court, on written request of the plaintiff, shall enter an order of default" and that the request "shall state the last known address of the defendant." Once the court has issued an order of default, the clerk's office must provide notice as required by Md. Rule 2–613(c):

> Promptly upon entry of an order of default, the clerk shall issue a notice informing the defendant that the order of default has been entered and that the defendant may move to vacate the order within 30 days after its entry. The notice shall be mailed to the defendant at the address stated in the request and to the defendant's attorney of record, if any. The court may provide for additional notice to the defendant.

The defendant has thirty days after the entry of the default order to file a motion to vacate. *See* Md. Rule 2–613(d).[13] If such a motion is filed and the court finds that "there is a substantial and sufficient basis for an actual controversy as to the merits of the action and that it is equitable to excuse the failure to plead, the court shall vacate the order." Md. Rule 613(e).[14] If, on the other hand, the

---

**13.** Because an order of default is an interlocutory order rather than a final judgment, the order may be revised at any time prior to the entry of a judgment by default. *See Banegura v. Taylor,* 312 Md. 609, 618–19, 541 A.2d 969 (1988).

**14.** To prevail on a motion to vacate an order of default, the responding party must state both the factual and legal basis underlying a meritorious defense and explain why he did not plead within the prescribed

defendant does not file a motion to vacate within the time frame permitted, or if he files a motion to vacate that is denied,

> the court, upon request, may enter a judgment by default that includes a determination as to liability and all relief sought, if it is satisfied (1) that it has jurisdiction to enter the judgment and (2) that the notice required by section (c) of this Rule was mailed.

Md. Rule 613(f).

The record in the case *sub judice* contains the following colloquy between the trial judge and counsel for Mr. and Mrs. Woomer at the outset of the inquisition on damages:

> THE COURT: All right. Mr. Tufts, let's see, you represent the plaintiffs.
>
> MR. TUFTS: Yes, Your Honor.
>
> THE COURT: Mr. and Mrs. Woomer. In looking at the file, it appears as if Judge Rushworth entered a default — signed an order of default as to Armiger Volunteer Fire Company on June 24, '96. *Notice was sent to—by the clerk on June 27, '96 to Armiger Volunteer Fire Company.* No motion to vacate the order of default has been filed. You requested — filed several requests for entry of judgment by default which really was your request that there be a hearing on the amount of damages —
>
> MR. TUFTS: Yes, Your Honor
>
> THE COURT: — in the default. Is that correct?
>
> MR. TUFTS: That is correct.

(Emphasis supplied.) With that, the court proceeded to take evidence.

 The language of Md. Rule 2–613(f) makes plain that a trial court may enter a judgment by default if and only if it is satisfied that the notice of order of default required by Md.

---

time. *See Carter v. Harris,* 312 Md. 371, 376, 539 A.2d 1127 (1988). Mere conclusory allegations are insufficient to vacate an order of default. *Id.* at 376–77, 539 A.2d 1127.

Rule 2–613(c) was *mailed.*[15] In interpreting the Maryland
Rules, we give words their common meaning, read them in
context, and to the extent possible read them in harmony, just
as we do in construing statutory language. *See In re Victor
B.,* 336 Md. 85, 94, 646 A.2d 1012 (1994); *State v. Montgom-
ery,* 334 Md. 20, 24, 637 A.2d 1193 (1994). Md. Rule 2–613(c)
sets forth with specificity not only the substance of the notice
that must be communicated to the defendant in default but
also the means by which that notice must be conveyed. Of
importance to our inquiry, the rule requires that the notice be
mailed to the defaulting defendant's last known address, as
stated in the request for order of default. Accordingly, for a
trial court to be "satisfied," within the meaning of Md. Rule 2–
613(f), that the notice of order of default was mailed in
conformity with Md. Rule 2–613(c), it must assure itself that
the notice was mailed to the defendant's last known address.

Our interpretation of Md. Rule 2–613(f) comports with the
mandatory notice language of Md. Rule 2–613(c) and effectu-
ates the purpose of that subsection, which is to afford a
defendant in default a second opportunity to respond and, if
armed with sufficient facts to excuse the initial failure to
answer and to defend the merits of the claim against it, an
opportunity to vacate the order of default. *See Carter v.
Harris,* 312 Md. 371, 376, 539 A.2d 1127 (1988); Paul V.
Niemeyer & Linda M. Schuett, *Maryland Rules Commentary,*
422 (2d ed.1992). This purpose and the intent of the drafters
of the rule and the Court of Appeals in adopting it is evi-
denced by correspondence from Hon. John F. McAuliffe, then
Chairman of the Standing Committee on Rules of Practice and
Procedure, to the Court of Appeals with respect to an amend-
ment to Md. Rule 2–613 that was proposed by the Court. As

---

**15.** As originally adopted, present subsection (c) provided that the court
satisfy itself, *inter alia,* that the notice of order of default "was mailed to
the defendant." In 1985, the words "to the defendant" were deleted
because they were considered inconsistent with the intent that Rule 2–
613 apply to *in rem* and *quasi in rem* actions as well as to *in personam*
actions. *See* Eighty–Ninth Report of the Standing Committee on Rules
of Practice and Procedure, at 2.

originally drafted, Md. Rule 2–613 provided that the notice of order of default be mailed to the defaulting defendant at the address provided for him in the complaint without regard for whether he might have a more current mailing address. In responding to a suggestion by the Court, Judge McAuliffe wrote:

> *Rule 2–613 Default Judgment*—The [Comment Review Subcommittee] concurs with the Court's recommendation that this Rule be amended to take account of the fact that at the time of requesting an order of default the plaintiff may have a more recent or accurate address for the defendant than was provided in the complaint. The subcommittee suggests adding at the end of [present section (b) ] the following sentence: "The request shall state the last known address of the defendant." Consistent with the proposed change in [present section (b) ], the subcommittee suggests amending the penultimate sentence in [present section (c) ] by substituting the phrase "stated in the request" for "specified in the pleading" and deleting the phrase "if any" following "address."

Letter of September 19, 1983 from the Comment Review Subcommittee, Standing Committee on Rules of Practice and Procedure to the Court of Appeals, at 4. Ultimately, these recommendations were adopted, thus eliminating the possibility that a notice of order of default would be mailed to a defaulting defendant at an outdated address provided in the complaint and maximizing the likelihood that the defaulting defendant indeed would be afforded the opportunity to challenge the entry of the default order.[16]

■ In the case *sub judice*, the discussion between the court and counsel for Mr. and Mrs. Woomer at the outset of the inquisition on damages reveals that the court ascertained from its file that the notice of order of default had been sent

---

**16.** In the case *sub judice*, it would not have been possible for Armiger to have been mailed the notice of order of default at the address given for it in the complaint because, as we have indicated, no address for it was furnished in the complaint.

by the clerk to Armiger on June 27, 1996. There is no indication that the court took any measure to determine whether that notice had been mailed in accordance with Md. Rule 2–613(c), *i.e.,* to Armiger's last known address, as provided in the request for entry of order of default. Moreover, the content of the record does not permit a reasonable conclusion that the notice of order of default was mailed to Armiger's last known address. The docket entry does not indicate where the notice was sent. The notice itself bears the address of the SDAT, under Armiger's name. Given that the notice is a computer-generated form that contains no address for Armiger other than that of the SDAT, that the complaint omits any address for Armiger, and that the only address for Armiger listed on any other notice of service in the court file is that of the SDAT, the only logical inference that can be drawn from the record is that the notice was mailed to the SDAT's address.[17] In short, the trial court did not satisfy itself that the notice of order of default was mailed to Armiger's last known address and indeed could not have done so.[18]

---

**17.** The observation in the February 5, 1997 "blue note" that Armiger's last known address was not on the request for entry of judgment by default or the proposed order is technically inapposite, although it makes plain that another judge on the same court was concerned about whether the notice requirement of Md. Rule 2–613 had been satisfied. A request for entry of judgment of default under subsection (f) need not bear the last known address of the defaulting defendant although, as we have indicated, the court must satisfy itself that notice was given as required by subsection (c), *i.e.,* by mailing the notice of order of default to the defendant's last known address.

**18.** We reject as wholly illogical the Woomers' contention that the trial court did or could have satisfied itself that the notice was mailed to Armiger's last known address, as indicated on the request for entry of order of default, from the fact that the last known address appeared on the request for entry of order of default. Proof that the Woomers complied with Md. Rule 2–613(b) by including Armiger's last known address on the request for order of default is not proof that the clerk's office mailed the notice of order of default to that address, especially given that the notice itself bears the SDAT's address. Moreover, the Woomers' argument hinges upon the trial judge having been aware that it was the standard practice of the clerk's office to mail a notice of order of default to the defaulting defendant's last known address, as provided in the request for order of default, regardless of the address

■ Mr. and Mrs. Woomer maintain that by withdrawing its motions to revise and to strike default judgment, Armiger waived its right to challenge any mailing error the clerk may have committed. They argue that a mailing error by the clerk is an "irregularity" that is within the revisory power of the lower court to correct and therefore is not an issue that may be addressed (or remedied) on appeal. This argument misperceives the nature of the error that Armiger asserts. In this appeal, Armiger has challenged the *trial court's* error in failing to comply with Md. Rule 2–613(f), which requires that before entering judgment by default, the court first must have satisfied itself that the clerk mailed the notice of order of default to Armiger's last known address. Armiger's appeal is not a challenge to the *clerk's* error in mailing the notice to the SDAT, although the clerk's mailing error is a relevant, predicate fact in that it is a clerical error that the trial court likely would have found had it taken the steps necessary to satisfy itself that the notice had been mailed properly.

Even assuming that after the entry of the judgment of default the lower court could have exercised its revisory power to vacate that judgment,[19] either because the court had not

appearing on the notice of order of default. There is nothing in the record in this case to indicate that the trial judge was aware of any such practice when he was charged with examining the record to satisfy himself that the notice had been mailed properly. Indeed, the only evidence about the practices of the clerk's office in that regard was submitted months later, through the affidavit of Mardonna Tyler. Moreover, that affidavit established at best that the clerk could not ascertain to which address the notice of order of default had been mailed.

**19.** Ordinarily, the revisory power of the court over unenrolled judgments under Md. Rule 2–535(a) applies to all final judgments. *See Owen v. Freeman*, 279 Md. 241, 245, 367 A.2d 1245 (1977); *Chapman v. Kamara*, 118 Md.App. 418, 433, 702 A.2d 977 (1997), *cert. granted*, 349 Md. 236, 707 A.2d 1330 (1998). Md. Rule 2–613(g) carves out an exception to Md. Rule 2–535(a), however. *See Quartertime Video & Vending Corp. v. Hanna*, 321 Md. 59, 65, 580 A.2d 1073 (1990)(per curiam). Under Md. Rule 2–613(g), a circuit court may not exercise its revisory power to revisit the issue of liability that was foreclosed by an order of default. *See* Niemeyer & Schuett, *supra*, at 473. To avoid giving the defaulting party a second bite at the apple after he has been

complied with Md. Rule 2–613(f) in entering the judgment or because the clerk's office had not complied with Md. Rule 2–613(c) in mailing the notice, Armiger did not forfeit its right to challenge the court's error on appeal when it withdrew its post-judgment motions to vacate or revise.

A motion to revise or to vacate under Rule 2–535(a) may be filed within thirty days after the entry of judgment. In this case, Armiger filed its motions to revise or to strike judgment seventeen days after the default judgment was entered. If the motions had been filed within 10 days of the entry of judgment, they would have tolled the 30–day time period for noting an appeal under Md. Rule 8–202(c). *See Alitalia Linee Aeree Italiane v. Tornillo,* 320 Md. 192, 200, 577 A.2d 34 (1990)(explaining that a revisory motion under Md. Rule 2–535(a) filed within ten days after entry of .judgment is treated as a Md. Rule 2–534 motion). Because Armiger's motions were not filed within ten days of the entry of judgment, however, their filing did not toll the 30–day deadline for noting an appeal, and Armiger had to file a notice of appeal within that 30 day time frame to preserve its appeal right.

■ Typically, "the mere filing of an appeal from the judgment does not strip the trial court of its revisory power." *Tiller v. Elfenbein,* 205 Md. 14, 21, 106 A.2d 42 (1954); *see also* Md. Rule 8–202(c). When a party has filed a Md. Rule 2–535(a) revisory motion more than ten days after the entry of the judgment but within the thirty-day deadline for doing so and also has filed a notice of appeal, he will "not [be] put to an immediate election as between the motion and the appeal."

given the opportunity to set aside the order of default by filing a motion to vacate, subsection (g) expressly limits the court's revisory power to the issue of damages. That limitation is not unconditional, however. Subsection (g) provides that "[a] default judgment *entered in compliance with this Rule* is not subject to the [circuit court's] revisory power under Rule 2–535(a) except as to the relief granted." (Emphasis supplied). Thus, by its terms, the limitation on the court's revisory power applies only to a default judgment entered in compliance with subsections (b) through (f) of Md. Rule 2–613. A default judgment entered in violation of Md. Rule 2–613 is not excluded from the court's revisory power.

*Tiller,* 205 Md. at 19, 106 A.2d 42. Only if the appeal is pending on the date scheduled for a hearing on the revisory motion will the moving party be put to the choice of pursuing either the motion or the appeal. *See Buffin v. Hernandez,* 44 Md.App. 247, 251, 408 A.2d 393 (1979). If the party elects to pursue the motion, he must dismiss the appeal before the date set for a motions hearing. *See id.* If that occurs, "the motion stands for hearing as though no appeal ha[d] been entered," *Eisenbeiss v. Jarrell,* 52 Md.App. 677, 683, 451 A.2d 940 (1982) (citations omitted), *cert. denied,* 464 U.S. 820, 104 S.Ct. 83, 78 L.Ed.2d 93 (1983), and "[t]he moving party's last attempt to win is directed to the trial court, instead of the Court of Special Appeals." *Tornillo,* 320 Md. at 198, 577 A.2d 34 (quoting Niemeyer & Schuett, *supra,* at 418). By contrast, if the moving party deliberately or inadvertently fails to dismiss his appeal before the date scheduled for the motions hearing, "the trial court lacks jurisdiction to entertain the motion, regardless of whether the motion is of the type that may be renewed or not." *Tiller,* 205 Md. at 21, 106 A.2d 42.

Armiger had until December 23, 1997, the final scheduled hearing date for its post-judgment motions, to choose between pursuing its motions or its appeal. It elected to pursue the appellate avenue for relief. At that point, any error that could have been addressed either by the circuit court in the exercise of its revisory power or by this Court on appeal fell solely within the domain of this Court to decide. An error on the part of the trial court in entering judgment under Md. Rule 2–613(f) falls into that category. Accordingly, Armiger did not waive its right to have that issue addressed on appeal when it withdrew its post-judgment motions.[20]

---

20. In their brief, Mr. and Mrs. Woomer persist in referring to any error on the part of the clerk's office in mailing the notice of order of default as an "irregularity" that the trial court could have exercised its discretion to correct under Md. Rule 2–535(b). From that, they argue that our review of the court's rulings in this case must be under an "abuse of discretion" standard and that Armiger was required to prove the existence of an "irregularity" by clear and convincing evidence. They are confused. Armiger's post-judgment motions were advanced under Md. Rule 2–535(a), which grants the trial court broad revisory power

**(ii)**

Mr. and Mrs. Woomer maintain that by mailing the notice of order of default to the SDAT instead of to Armiger's last known address as stated in the request for order of default, the clerk's office comported with Md. Rule 2–613(c); therefore, the court properly entered the judgment by default, because from looking in the court file it could be satisfied that the mailing requirement of Md. Rule 2–613(c) had been met. They cite *Academy of IRM v. LVI Envtl. Serv., Inc.*, 344 Md. 434, 687 A.2d 669 (1997), in support, arguing that under the holding in that case service is sufficient when, objectively viewed, it is calculated to give a corporate defendant fair notice. They reason that because original service on Armiger had been effected upon the SDAT, subsequent mailing of the notice of order of default to the SDAT was proper because it was calculated to give Armiger fair notice. We disagree with the Woomers' analysis.

In *Academy of IRM*, the plaintiff undertook to serve original process on the defendant, a foreign corporation, by certified mail, pursuant to Md.Code (1974, 1995 Repl.Vol.), §§ 6–103 and 6–304 of the Courts and Judicial Proceedings Article and Md. Rules 2–121 and 2–124. *Id.* at 438, 687 A.2d 669. The certified letter containing the complaint was addressed to the "Controller" of the defendant at the defendant's corporate headquarters in Malvern, Pennsylvania and was marked "Restricted Delivery." The mail was delivered to the corporate headquarters and was signed for by someone other than the "Controller." *Id.* The word "agent" was circled next to the signature of the person to whom delivery was made. *Id.* at

---

over unenrolled judgments, not under Md. Rule 2–535(b), which grants that court limited revisory power over enrolled judgments. Thus, the trial court could have granted either of Armiger's motions irrespective of whether there had been "fraud, mistake, or irregularity" in the judgment, as required by Md. Rule 2–535(b). Moreover, because Armiger's post-judgment motions were not brought under Md. Rule 2–535(b), it was not required to prove the existence of an "irregularity" by clear and convincing evidence or by any other standard. Finally, the post-judgment motions were not ruled upon and are not the subject of this appeal.

439, 687 A.2d 669. The corporation did not appear in response to the complaint. Thereafter, the lower court issued an order of default. The notice of order of default was mailed to the "Controller" at the corporation's Malvern, Pennsylvania headquarters. *Id.* The corporate defendant did not file a motion to vacate. *Id.* at 440, 687 A.2d 669. After being requested to do so, the court entered judgment by default against the corporate defendant. *Id.*

The Court of Appeals first held that service of original process had been validly effected. *Id.* at 446, 687 A.2d 669. It reasoned that the "Controller" was for all intents and purposes the corporate treasurer, and that, under Md. Rule 2–124(c), a foreign corporation's treasurer is one of the corporate representatives upon whom service may be effected. *Id.* at 446–47, 687 A.2d 669. Moreover, the circle around the word "agent" next to the signature of the person who accepted delivery gave rise to the reasonable inference that that person was authorized to accept delivery on behalf of the "Controller." *Id.* at 445–46, 687 A.2d 669. The Court next ruled that because *in personam* jurisdiction had been acquired over the corporate defendant, it was no longer necessary for subsequent papers in the case to be served on that defendant according to the rules governing original service. *Id.* at 450, 687 A.2d 669. "Consequently, when notice of the order of default was mailed by the circuit court clerk to the Pennsylvania address at which service had been effected, that notice complied with Md. Rule 2–613[ (c) ]." *Id.* at 434, 687 A.2d 669.

The Woomers' reliance upon *Academy of IRM* is misplaced. In that case, unlike the case at bar, the notice of order of default was mailed to the defendant's last known address, as listed on the request for order of default, in compliance with Md. Rule 2–613(c). There was no dispute that the clerk of court had mailed the notice to the defaulting defendant's last known address nor was there any dispute that the lower court had satisfied itself of that fact before it entered judgment by default, under Md. Rule 2–613(f). Rather, the dispute focused upon the propriety of original service

and whether *in personam* jurisdiction had been acquired. *Academy of IRM* does not stand for the proposition that the address at which a defendant is served with original process is an acceptable mailing address for a notice of order of default, irrespective of the language of Md. Rule 2–613(c) to the contrary. Indeed, that proposition is disproven by the 1983 amendment to Md. Rule 2–613 discussed above, which provided for mailing of the notice of order of default be mailed to the defaulting defendant at his last known address, instead of to his address as provided in the complaint.

Finally, we note that, under the circumstances of this case, the objective of "fair notice" that Mr. and Mrs. Woomer contend was accomplished by service of the notice of order of default on the SDAT was not accomplished at all. Although Armiger has never disputed the propriety of service of original process on the SDAT, it is evident that Armiger did not receive actual notice of the pendency of the Woomers' lawsuit and that, because there is no obligation on the part of the SDAT to forward papers other than the complaint and summons to a corporation for which it admits service,[21] service of the notice of order of default or any other paper directed to Armiger in this case on the SDAT would not result necessarily in notice to Armiger.

**JUDGMENT VACATED; CASE REMANDED TO THE CIRCUIT COURT FOR ANNE ARUNDEL COUNTY FOR PROCEEDINGS CONSISTENT WITH THIS OPINION.**

**COSTS TO BE PAID BY APPELLEES.**

---

**21.** Md.Code (1974, 1995 Repl.Vol.), § 6–307 of the Courts and Judicial Proceedings Article, entitled "Duty of Department of Assessments and Taxation when served with process," provides:

When process is served on the Department of Assessments and Taxation in accordance with the Maryland Rules, the Director shall record the date and time of service, and shall forward a copy of the process and notice of service to the defendant at his mailing address, if known, or to his principal place of business.

There is no statute or rule requiring the SDAT to forward subsequent pleadings to the corporate defendant for which it has admitted service.