756 A.2d 565

ATTORNEY GRIEVANCE COMMISSION OF MARYLAND

v.

Michael G. MIDDLETON.

Misc. Docket AG No. 31, Sept. Term, 1999.

Court of Appeals of Maryland.

July 26, 2000.

Melvin Hirshman, Bar Counsel, and Raymond Hein, Asst. Bar Counsel, for Atty. Grievance Com'n of Maryland.

Michael G. Middleton, Baltimore, for Respondent.

Argued before BELL, C.J., and ELDRIDGE, RODOWSKY, RAKER, WILNER, CATHELL and HARRELL, JJ.

RODOWSKY, Judge.

The petitioner, Attorney Grievance Commission of Maryland, acting through Bar Counsel, filed a Petition for Disciplinary Action against the respondent, Michael G. Middleton (Middleton), alleging misconduct arising out of Middleton's representation of the persons respectively accused in four separate criminal cases over a two-year period. Based on Middleton's default, the hearing judge found that Middleton had committed all of the violations charged, the most serious of which, intentional misrepresentation to a court, is evidenced by a judgment of criminal contempt. Middleton, claiming lack of notice, seeks vacating of the default and an evidentiary hearing.

Middleton was admitted to the bar of this Court in June 1977. He entered practice as an attorney with the Legal Aid Bureau where he served until 1983, at which time he held the position of Deputy Director. From 1983 to 1988 he was an Assistant United States Attorney in the District of Maryland. Thereafter he entered private practice as a partner in a small firm which ultimately dissolved. In 1996, the year of the earliest of the instant charges, Middleton was employed by a very active criminal defense attorney. The remaining charges are based on acts or omissions occurring while Middleton was a sole practitioner.

When the Petition for Disciplinary Action was filed against Middleton, this Court referred the matter for hearing to

Judge Gary I. Strausberg of the Circuit Court for Baltimore City. Our order also directed Middleton to answer the petition within fifteen days after service. On September 22, 1999, an investigator for Bar Counsel personally served the petition and order on Middleton at 2407 Brohawn Avenue, Baltimore, Maryland 21230, where Middleton maintained his office and also his home. Middleton has never answered the petition.

On October 19, 1999, Bar Counsel moved for an order of default, using 2407 Brohawn Avenue as Middleton's address in the certificate of service. An order of default was signed by Judge Strausberg and entered on October 21. It allowed Middleton thirty days from that date within which to move to vacate the order of default, and it set the matter for hearing on December 2, 1999. The clerk mailed a copy of the order of default to Middleton at 2407 Brohawn Avenue. Middleton did not move to vacate. The hearing was postponed to February 2, 2000. Middleton did not appear.

On the day of the hearing in this Court Middleton did appear. Orally and by a written motion, "To Reject Trial Court's Findings of Fact and Recommendations and to Order a New Hearing," Middleton represented to us that he did not receive the motion for, or order of, default. He stated that he was a tenant at 2407 Brohawn Avenue and that he was current in his rent, but that, unknown to him, his landlord's mortgage had been foreclosed. He stated that he first learned of the foreclosure sometime in the fall of 1999 when he found on the sidewalk outside of 2407 Brohawn Avenue what scavengers had left of his office files and personal belongings after he had been evicted.

The parties agree that in the fall of 1999 Middleton moved to his mother's home at 2625 North Hilton Street in Baltimore City. The record contains no indication, and Middleton makes no representation to us, that he notified the clerk of this Court, or of the Circuit Court for Baltimore City, or Judge Strausberg, or Bar Counsel, of his change of address. Nor does Middleton represent that he made arrangements with the

United States Postal Service to have his mail forwarded to his new address.

In his motion filed on the day of the hearing in this Court Middleton represented that he was without knowledge that the hearing on his default was scheduled for February 2, 2000. Bar Counsel, on the other hand, orally represented to this Court at the hearing that, through "independent efforts," he learned that Middleton was living at 2625 North Hilton Street. Bar Counsel further represented that by a letter dated December 22, 1999, which was not returned by the Postal Service, he advised Middleton that this matter would be heard by Judge Strausberg on February 2, 2000. Additionally, Bar Counsel represented to us that, after having received a voice mail message from Middleton sometime in February, Bar Counsel mailed to Middleton at 2625 North Hilton Street, under cover of a letter dated February 24, 2000, a copy of Bar Counsel's letter of December 22 and a copy of the findings and conclusions that had been filed on February 4, 2000, by Judge Strausberg with the clerk of the circuit court. For the reasons hereinafter stated, we do not believe that this factual dispute is material or that it is necessary for Bar Counsel to supplement the record with copies of his letters, as he offered to do at the hearing before us.

At the hearing on February 2 Judge Strausberg opened the proceedings by stating that "this matter was set sometime ago for 3:30 today" and that Middleton's absence "is simply in conformity with what appears to be a pattern of behavior on his part." At that hearing Bar Counsel introduced sixteen exhibits. Judge Strausberg's findings and conclusions in substance repeated the allegations of the Petition for Disciplinary Action, inasmuch as those allegations were admitted by the default. *See Curry v. Hillcrest Clinic, Inc.*, 337 Md. 412, 434, 653 A.2d 934, 945 (1995).

Judge Strausberg's report reads, in pertinent part, as follows:

"A. Respondent's Representation of Edward Erler, Jr.

"In 1996, the Respondent was employed at the Law Offices of William H. Murphy, Jr. & Associates, P.A. While employed at that law firm, the Respondent was assigned to represent Edward P. Erler, Jr., who was charged with criminal assault and handgun violations in Baltimore County. Trial in the criminal case of State of Maryland v. Edward Erler, Jr., Case No. 96 CR 0161 in the Circuit Court for Baltimore County, was scheduled for and did commence on July 31, 1996. The Respondent was unprepared for that trial and failed to provide competent representation in defending Mr. Erler. Among other things, the Respondent failed to:

"a. Meet with and go over possible defense strategies with his client;

"b. Pursue a motion to suppress evidence that may have been illegally obtained;

"c. Present evidence in support of an intoxication defense that may have been available to his client;

"d. Prepare adequately to cross-examine the State's witnesses;

"e. Prepare and submit voir dire;

"f. Prepare and request specific jury instructions applicable to the charges in the case; and

"g. Object to possibly improper jury instructions prejudicial to his client.

"At the conclusion of trial on August 2, 1996, a jury found Mr. Erler guilty of attempted voluntary manslaughter and use of a handgun in a crime of violence. On November 7, 1996, Mr. Erler was sentenced to incarceration for five years. Following an unsuccessful appeal, in which Mr. Erler was represented by the Public Defender's Office, Mr. Erler, now represented by new private counsel, filed a Petition for Post–Conviction Relief in the Circuit Court for Baltimore County. After evidence was presented at a hearing on May 19, 1998, the State conceded that the Respon-

dent had provided ineffective assistance of counsel in defending Mr. Erler at his 1996 trial. The court then granted post-conviction relief.

"The Court concludes that the Respondent, by his acts and omissions while representing Edward P. Erler, Jr., engaged in misconduct as defined in Maryland Rule BV1k (so numbered at the time of Respondent's representation) and that he violated Rules 1.1 [1] and 8.4(d) [2] of the Maryland Rules of Professional Conduct.

### "B. Respondent's Representation of Tyrell Fields

"In October 1997, the Respondent, then practicing as a sole practitioner, undertook representation of Tyrell Fields, who was charged with first degree rape in Baltimore County. After two postponements, trial in the criminal case of State of Maryland v. Tyrell Fields, Case No. 97 CR 3551 in the Circuit Court for Baltimore County, was scheduled for April 15, 1998. As of April 15, 1998, the Respondent had not filed any pretrial motions or discovery requests in the Fields case.

"On the morning of April 15, 1998, the Respondent contacted the chambers of Judge Barbara K. Howe and asked for a continuance of the trial scheduled that day due to a claimed physical ailment. The Respondent asserted that he was suffering from back spasms and that he intended to go to the hospital. Upon Judge Howe's instructions, the Respondent was told to appear in court. Later in the day, the Respondent appeared in Judge Howe's chambers and was questioned about his failure to file discovery in the Fields case. Although a medical examination report from the

---

**1.** Rule 1.1, "Competence," provides: "A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation."

**2.** Section (d) of Rule 8.4, "Misconduct," provides: "It is professional misconduct for a lawyer to ... engage in conduct that is prejudicial to the administration of justice[.]"

State's file had been sent to the Respondent on February 4, 1998, the Respondent had made no other efforts to obtain discoverable information from the State's file. Due to concerns about the Respondent's ability to provide adequate representation to Mr. Fields, the court postponed the trial scheduled for April 15, 1998. Other counsel subsequently replaced the Respondent as attorney for the defendant.

"The Court concludes that the Respondent, by his acts and omissions while representing Tyrell Fields, engaged in misconduct as defined in Maryland Rule 16–701 k and that he violated Rules 1.1, 1.3 [3] and 8.4(d) of the Maryland Rules of Professional Conduct.

"C. Respondent's Representation of Samuel Godwin

"On December 30, 1998, the Respondent entered his appearance as attorney for the defendant in the criminal case of State of Maryland v. Samuel Godwin, Case No. 98 CR 2964 in the Circuit Court for Baltimore County. Mr. Godwin was charged with second degree rape. By agreement of counsel following the Respondent's appearance, trial in the Godwin case was rescheduled for Monday, February 8, 1999. On the morning of trial, the Respondent approached James Gentry, Jr., the Assistant State's Attorney handling the case, about postponing the trial. The Respondent commented to Mr. Gentry that he needed to come up with a reason to postpone the case. Mr. Gentry told the Respondent he would oppose any request for a postponement. The Respondent later informed Mr. Gentry that he needed the postponement because he was in a continuing trial before Judge John Prevas in the Circuit Court for Baltimore City and that he needed to be in that court at 10:45 that morning. The Respondent and Mr. Gentry then went before Judge Thomas Bollinger for a hearing on the Respondent's request for a postponement. During that hearing, the Respondent stated two reasons for

---

**3.** Rule 1.3, "Diligence," provides: "A lawyer shall act with reasonable diligence and promptness in representing a client."

his request, the first being the absence of a defense witness who had not been subpoenaed by the Respondent. The other reason stated by the Respondent was that he had been instructed to report to Judge Prevas's courtroom at 10:45 to start a trial that had been carried over from the previous week in the Circuit Court for Baltimore City. Based on the Respondent's representation, Judge Bollinger released the Respondent to go to Baltimore City with instructions to return if the Baltimore City case did not start by 2:00 p.m.

"Following the hearing on February 8, 1999, Mr. Gentry contacted Judge Prevas's chambers and determined that the Respondent had not been instructed to report to Judge Prevas's courtroom at 10:45. After that information was conveyed to Judge Bollinger, Judge Bollinger personally contacted Judge Prevas and confirmed that the Respondent was not involved in a trial before Judge Prevas. The Respondent's misrepresentation to Judge Bollinger ultimately caused the case of State v. Samuel Godwin to be postponed.

"At the request of Judge Bollinger, the State's Attorney for Baltimore County instituted a proceeding for constructive criminal contempt pursuant to Maryland Rule 15–205(b) by filing a Petition for Criminal Contempt against the Respondent. That action was based on the Respondent's misrepresentation to the court in seeking a continuance of the Godwin trial. The criminal contempt case was docketed as State of Maryland v. Michael Middleton, Case No. 99 CR 0648 in the Circuit Court for Baltimore County.

"On November 18, 1999, the Respondent entered an Alford plea to the charge of criminal contempt. On January 19, 2000, Judge James T. Smith, Jr. of the Circuit Court for Baltimore County sentenced the Respondent to a term of 18 months in the Department of Correction. The court suspended the sentence and placed the Respondent on supervised probation for a period of three years, subject to the following conditions:

"1. The Respondent is to complete any treatment for alcohol or CDS recommended by the Division of Parole and Probation (Probation) and the Treatment Alternatives to Street Crime (T.A.S.C.) program, including but not limited to a treatment program at Epoch Counseling Center;

"2. The Respondent is to attend a minimum of 4 Narcotics Anonymous and/or Alcoholics Anonymous meetings per week unless modified by Probation or T.A.S.C.;

"3. The Respondent agrees to 'surrender' his license to practice law for one year beginning January 20, 2000.[4]

"Pursuant to Maryland Rule 16–710e, the Respondent's conviction in the criminal contempt case is conclusive proof of his guilt of criminal contempt.

"The Court concludes that the Respondent, by his acts and omissions while representing Samuel Godwin, and specifically by his misrepresentations to the prosecutor and to Judge Bollinger in seeking a continuance, engaged in misconduct as defined in Maryland Rule 16–701 k and that he violated Rules 1.3, 3.3(a)(1)[5] and 8.4(c)[6] & (d) of the Maryland Rules of Professional Conduct.

"D. Respondent's Representation of Stephen Lamkin

"On April 10, 1998, the Respondent entered his appearance as attorney for the defendant in the criminal case of

---

**4.** The validity of this condition is not an issue before us. *But see* Attorney Grievance Comm'n v. Kent, 337 Md. 361, 371, 653 A.2d 909, 914 (1995) ("[T]his Court has original and complete jurisdiction over disciplinary proceedings.").

**5.** Section (a)(1) of Rule 3.3, "Candor toward the tribunal," provides: "A lawyer shall not knowingly ... make a false statement of material fact or law to a tribunal[.]"

**6.** Section (c) of Rule 8.4, "Misconduct," provides: "It is professional misconduct for a lawyer to ... engage in conduct involving dishonesty, fraud, deceit or misrepresentation[.]"

State of Maryland v. Stephen Lamkin, Case No. 297356047 in the Circuit Court for Baltimore City. Mr. Lamkin was charged with possession and intent to distribute cocaine. Trial in the Lamkin case was scheduled for November 24, 1998. On that date, the case was assigned to Judge Kathleen O'Ferrall Friedman. On November 24, 1998, the Respondent failed to appear for trial without any explanation or attempt to communicate with the court. Judge Friedman's law clerk called the Respondent's office three times and left messages for him, but the Respondent never called back. Due to the Respondent's absence, the case of State v. Stephen Lamkin was postponed. As of April 22, 1999, the date an Inquiry Panel hearing was held to consider this matter, the Respondent had never contacted Judge Friedman to offer an explanation or apology for his failure to appear at the Lamkin trial on November 24, 1998.

"The Court concludes that the Respondent, by his acts and omissions while representing Stephen Lamkin, and specifically by his unexplained and unexcused failure to appear for trial in Mr. Lamkin's case, engaged in misconduct as defined in Maryland Rule 16–701 k and that he violated Rules 1.3 and 8.4(d) of the Maryland Rules of Professional Conduct.

"E. Failure to Respond to Bar Counsel

"The Court finds that the information about the Erler and Fields cases was reported to Bar Counsel in a letter dated June 12, 1998 from Sandra A. O'Connor, State's Attorney for Baltimore County. By letters dated June 24, 1998 and July 16, 1998, Bar Counsel requested that the Respondent respond to issues raised by Ms. O'Connor's correspondence. The Respondent did not respond in a timely manner to Bar Counsel's letters. The Respondent submitted an untimely response that was received by Bar Counsel on July 30, 1998.

"The information about the Lamkin case was reported to Bar Counsel in a letter dated November 24, 1998 from Judge Kathleen O'Ferrall Friedman. By letter dated December 15, 1998, Bar Counsel requested that the Respon-

dent respond to issues raised by Judge Friedman's correspondence. The Respondent did not respond to Bar Counsel's letter.

"The Court concludes that the Respondent, by his failure to respond as requested to lawful demands for information from a disciplinary authority, violated Maryland Rule of Professional Conduct 8.1(b).[7]"

I

 Middleton's motion to set aside Judge Strausberg's findings and conclusions, and to remand this matter for an evidentiary hearing, is addressed to the discretion of this Court. Petitions for disciplinary action are original proceedings in this Court, and the circuit judge who is designated to hear the matter acts, substantially, as a master for this Court. Thus, the default is interlocutory. In this posture we shall apply the factors that are to be considered by a circuit court when asked to vacate an order of default entered pursuant to Rule 2–613(b). One of these factors is whether the defendant has offered "a satisfactory explanation ... why he failed to answer the initial complaint within the time allowed." *Director of Finance v. Harris*, 90 Md.App. 506, 515, 602 A.2d 191, 195 (1992). *See also* Rule 2–613(d) ("The motion [to vacate the order of default] shall state the reasons for the failure to plead."); *Banegura v. Taylor*, 312 Md. 609, 617–21, 541 A.2d 969, 973–75 (1988) (applying rule). Here, Middleton has offered no explanation for the failure to answer the original petition. It is clear that he has not acted with ordinary diligence, as required. *See Maryland Lumber Co. v.*

---

7. Rule 8.1, "Bar admission and disciplinary matters," provides:

"An applicant for admission or reinstatement to the bar, or a lawyer in connection with a bar admission application or in connection with a disciplinary matter, shall not:

. . . .

"(b) fail to disclose a fact necessary to correct a misapprehension known by the person to have arisen in the matter, or knowingly fail to respond to a lawful demand for information from an admissions or disciplinary authority, except that this Rule does not require disclosure of information otherwise protected by Rule 1.6."

*Savoy Constr. Co.*, 286 Md. 98, 102, 405 A.2d 741, 744 (1979); *Owl Club, Inc. of Baltimore v. Gotham Hotels, Ltd.*, 270 Md. 94, 100, 310 A.2d 534, 537 (1973).

Rather than focusing on the failure to answer, which constituted the basis for his admission of the petition's allegations, Middleton focuses on the notice of entry of the order of default and alleges that he did not receive that notice because of the eviction and his change of residence. The record reflects that notice of the entry of the order of default was sent in accordance with Rule 2–613. Subsection (b) requires a "written request of the plaintiff" which "shall state the last known address of the defendant." Because of the possibility of a change of address, and in order to increase the likelihood that notice would be received, the rule was drafted to require the plaintiff to state the "last known address of the defendant," in contrast with requiring the notice to be sent to the same address at which personal service was effected. *See Armiger Volunteer Fire Co. v. Woomer,* 123 Md.App. 580, 590–91, 720 A.2d 17, 22–23 (1998) (reviewing history of provision and vacating default because notice not sent to the last known address), *cert. denied,* 352 Md. 619, 724 A.2d 21 (1999). Here, Bar Counsel furnished the clerk with 2407 Brohawn Avenue, the last known address, and the clerk sent the notice to that address.

As with the failure to answer, Middleton has no one to blame but himself if the notice of order of default was not received, as he alleges. Both as a litigant, and as an attorney representing himself, Middleton was obliged to keep the court and his adversary advised of his current address. Rule 1–311(a) requires that "[e]very pleading or paper filed shall contain the address and telephone number of the person by whom it is signed." Further, Rule 1–321(a) in part requires that "[s]ervice upon the attorney or upon a party shall be made by delivery of a copy or by mailing it to the address most recently stated in a pleading or paper filed by the attorney or party, or if not stated, to the last known address." We referred to these provisions in *J.T. Masonry Co. v. Oxford*

*Construction Services, Inc.,* 314 Md. 498, 551 A.2d 869 (1989), a case in which the plaintiff sought to reinstate an action that had been dismissed for want of prosecution. The plaintiff contended that its counsel had not received the required thirty-day notice cautioning that, absent a motion, an order of dismissal would be entered. Counsel for the plaintiff had changed his office address, but he testified that he had furnished the new address to the clerk of the court who had advised him that the attorney's address would be changed in all cases in which his appearance was entered simply by the clerk's making a single entry into the clerk's computer. We commented in dicta that, "[f]rom the standpoint of compliance with [Rules 1–311(a) and 1–321(a) ], we . . . have grave doubts that [the attorney] was justified in relying on the procedure recommended by the clerk." *Id.* at 505–06 n. 3, 551 A.2d at 872–73 n. 3. Rather, compliance with the two rules would be achieved by filing a written notice of change of address in each case in which the attorney appeared, with ordinary mail service copies to all other parties. Here, Middleton did not file with the clerk of the circuit court, or serve, a notice of change of address.

█ Rule 2–613(d) also requires that the motion to vacate an order of default state "the legal and factual basis for the defense to the claim." The purpose of the provision is to enable the court to make a determination whether the defense is meritorious. *See Carter v. Harris,* 312 Md. 371, 376, 539 A.2d 1127, 1129–30 (1988); *Maryland Lumber Co.,* 286 Md. at 102, 405 A.2d at 744. In the Godwin case there can be no defense as to the fact of violation of Rule 3.3, prohibiting a lawyer from knowingly making a false statement of material fact to a tribunal. That violation has been conclusively determined by the judgment against Middleton in the criminal contempt case. *See* Rule 16–710.e. Although this rule does not "preclude the attorney from introducing evidence or otherwise showing cause why he should not be disciplined," Rule 16–710.e.2, Middleton, in argument to us, has asserted that he was honestly mistaken in believing that he was ordered to report to Judge Prevas, as opposed to being on standby

status. Relitigation of this issue of ultimate fact is barred by the criminal conviction.

Nor has Middleton, in argument before this Court, indicated a *meritorious* defense in the Erler and Fields matters. In Erler's case Middleton's representation was so ineffective that the State conceded on post conviction that Erler was entitled to relief. In Fields's case Middleton's lack of preparation was so apparent to Judge Howe that she postponed the trial. In Lamkin's case Middleton advised us at hearing that, when Lamkin's mother was unable to pay Middleton's fee and told him that she was going to arrange for defense by the Public Defender, Middleton assumed that that would be done. He admitted to us that he was at fault in not seeking to withdraw his appearance, which resulted in the complaint against him to Bar Counsel by Judge Friedman of the Circuit Court for Baltimore City. The charges involving Middleton's failure timely to respond to Bar Counsel's requests are substantially a matter of documentary record. Based on his oral presentation to this Court, Middleton's defense on those charges seems to be that Middleton had requested that Bar Counsel do something about the State's Attorney's Office in Baltimore County "trying to tell [him] how to practice," inasmuch as Middleton "did not believe that the State's Attorney ought to be telling [him] how to represent [his] client."

Remarkably, Middleton furnished additional evidence of the pattern of incompetence found by Judge Strausberg when Middleton admitted to us that on three occasions Judge Turnbull of the Circuit Court for Baltimore County had told clients represented by Middleton that they should obtain other counsel.

An evidentiary hearing in a bar discipline matter, of course, is not limited to facts bearing on whether there has been a violation. Facts directed to establishing mitigation of the sanction also are relevant. In the matter before us, the conditions in Judge Smith's probation order in the criminal contempt case, dealing with drug or alcohol treatment, strongly suggest that Middleton's problems may be rooted in chemi-

cal dependency. Yet, in this Court, Middleton did not argue for mitigation on those grounds. If Middleton has a drug or alcohol problem, he does not recognize it.

Our consideration of the relevant factors, as reviewed above, leaves us unpersuaded to relieve Middleton of his default.

## II

■ On the issue of an appropriate sanction, Bar Counsel recommends that Middleton be suspended indefinitely, with no right to apply for termination of the suspension within three years. Of our prior attorney discipline cases Bar Counsel submits, and we agree, that the most analogous is *Attorney Grievance Commission v. Sherman*, 295 Md. 229, 454 A.2d 359 (1983). Sherman had represented to a court, contrary to the fact of the matter, that he had not accepted any payment toward fee made by or on behalf of the accused in a criminal case where the issue before the court was whether the attorney had undertaken representation of the accused. Sherman also had "previously received a dismissal with warning for neglect and incompetence in an estate matter." *Id.* at 240, 454 A.2d at 365. We suspended Sherman for three years.

This Court has said that "[c]andor and truthfulness are two of the most important moral character traits of a lawyer." *Attorney Grievance Comm'n v. Myers*, 333 Md. 440, 449, 635 A.2d 1315, 1319 (1994). Middleton's case and that of Sherman are similar in that each made misrepresentations to a court. Middleton has received two prior reprimands, one in 1996 and the other in 1998. The earlier violations concerned failure to take appropriate safekeeping measures with respect to personal property entrusted by a client and practicing after having been decertified for failure to pay the annual assessment to the Clients' Security Trust Fund. The 1998 violations involved failure to act with diligence, to keep the client informed, and to refund unearned fees. In both cases Middleton failed to respond timely to Bar Counsel. These prior disciplinary matters, coupled with the similar violations in the cases before us, reflect a pattern of misconduct. There are no mitigating circumstances.

Under all of these circumstances, we shall accept Bar Counsel's recommendation. Michael G. Middleton is suspended indefinitely, with no right to seek termination of this suspension for three years measured from the date of the filing of this opinion and order. In addition we direct Middleton to provide Bar Counsel with a list of all active clients whose cases had not been completed before the date he stopped practicing law. For each such client, we direct Middleton to provide Bar Counsel with a statement of advance fee payments received, an accounting of any unearned fees to be returned or already returned to the client, and a copy of a letter notifying the client that Middleton has terminated the representation and advising the client of the necessity to seek alternative representation. Middleton is further directed to provide Bar Counsel with copies of notices to all courts striking or withdrawing his appearance in all cases in which it was entered at the time he stopped practicing law.[8]

**IT IS SO ORDERED; RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING THE COSTS OF ALL TRANSCRIPTS, PURSUANT TO MARYLAND RULE 16–715 c FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION OF MARYLAND AGAINST MICHAEL G. MIDDLETON.**

Dissenting opinion by RAKER, J., in which CATHELL, J., joins.

Raker, Judge, dissenting:

I respectfully dissent from the sanction imposed by the Court in this case. In my view, Respondent should be disbarred.

---

**8.** Bar Counsel also requested that we establish in the order in this case certain conditions that must be met before the suspension is terminated. Inasmuch as the suspension is indefinite, any conditions that Middleton might have to meet in order to obtain termination of the suspension can better be set in light of the circumstances at the time of any application to terminate the suspension.

Respondent *lied* to a circuit court judge, provided ineffective assistance of counsel to his client in a criminal case which resulted in the court's grant of post-conviction relief, acted in an incompetent fashion in other cases, and was convicted of criminal contempt. He was sentenced to a term of eighteen months in the Department of Corrections, all suspended with a period of three years supervised probation. He failed to respond to Bar Counsel's inquiries and failed to appear at the Circuit Court hearing in this matter.

Respondent has exhibited a pattern of misconduct, and a history of disciplinary sanctions. In 1996, he was reprimanded for failing to take appropriate safekeeping measures with respect to client property and for practicing after he had been decertified for failure to pay the annual assessment to the Clients' Security Trust Fund. In 1998, he was sanctioned for failure to act with diligence, to keep the client informed and to refund unearned fees. He likewise did not respond to Bar Counsel's inquiries in those cases.

How many chances is Respondent entitled to receive? Having demonstrated by his repeated misconduct and incompetence that he is not fit to practice law, he should be disbarred.

Judge CATHELL has authorized me to state that he joins in the views expressed herein.