646 A.2d 1012

**In re VICTOR B.**

**No. 159, Sept. Term, 1993.**

Court of Appeals of Maryland.

Aug. 29, 1994.

Margaret L. Lanier, Asst. Public Defender, argued (Stephen E. Harris, Public Defender and Edwin H. Convey, Asst.

Public Defender, both on brief) and Geraldine K. Sweeney, Asst. Public Defender, argued, Baltimore, for appellant.

Mary Ann Ince, Asst. Atty. Gen., argued and on brief (J. Joseph Curran, Jr., Atty. Gen., on brief), Baltimore, for appellee.

Argued before MURPHY, C.J., and ELDRIDGE, RODOWSKY, CHASANOW, KARWACKI, BELL and RAKER, JJ.

RAKER, Judge.

The issue in this case is whether the criminal rules of procedure under Title 4 of the Maryland Rules apply to an adjudicatory proceeding in a juvenile cause. A Master in the Division for Juvenile Causes of the Circuit Court for Baltimore City ruled that the appellant's failure to file a prehearing motion to suppress evidence as required by Maryland Rule 4–252 constituted a waiver of the issue. We hold that juvenile delinquency proceedings are governed exclusively by Chapter 900 of the Maryland Rules of Procedure.

## I.

On May 6, 1993, a Master in the Division for Juvenile Causes of the Circuit Court for Baltimore City held an adjudicatory hearing on a delinquency petition filed by the State against the appellant, Victor B., alleging one count of possession of cocaine with intent to manufacture and distribute and one count of possession of cocaine in violation of Maryland Code (1957, 1992 Repl.Vol.) Art. 27, §§ 286 & 287. Although the appellant objected to the testimony pertaining to the controlled dangerous substance, the Master would not consider the objection because appellant had not filed a motion to suppress the evidence before the hearing.

According to Officer Hensley, on September 16, 1992, he and another officer observed the appellant walking on the street in Baltimore City. They saw him place a brown paper bag between the steps and a trash can. While the other

officer detained the appellant, Officer Hensley retrieved the brown paper bag which contained controlled dangerous substances.

At the appellant's adjudicatory hearing, when Officer Hensley began to describe the contents of the brown paper bag, appellant objected on the grounds that the bag belonged to him and that he had not abandoned it. The Master initially overruled the appellant's objection because "[t]here's been no notice of [a] suppression motion." The Master, never reaching the merits of the suppression issue, stated: "I don't think that the evidence is clear whether this, in fact, has been abandoned or not." Following argument on the issue, the Master concluded that the general rules of the circuit court apply to juvenile proceedings when the Chapter 900 rules have no applicable or comparable provision. Thus, because no preliminary motion to suppress had been filed by the appellant as required in a circuit court criminal case by Rule 4–252, the Master ruled that the issue was waived and declined to consider the motion.

Following the Master's ruling, the adjudicatory hearing resumed and Officer Hensley testified that the paper bag contained twenty-four ziplock bags of a substance later analyzed to be cocaine. The court resolved the issues of chain of custody, accuracy of the laboratory analysis, Officer Hensley's expertise in the field of narcotic investigation, identification, packaging, distribution and street level sale of narcotics in Baltimore City by stipulation between the parties.

The Master found the evidence sufficient to sustain the charge of possession with intent to manufacture and distribute controlled dangerous substances. After a dispositional hearing, the Master filed his recommendations with the circuit court that the appellant be found delinquent and be placed on indefinite probation with a special condition that he be required to actively seek employment.

The appellant filed a timely exception in the Circuit Court for Baltimore City asserting that the admissible evidence was insufficient to support the finding that he had committed a

delinquent act. At the hearing before the circuit court, counsel for the appellant objected to the application of Title 4 to proceedings in the juvenile division. The circuit court, overruling the appellant's exception, agreed with the Master that the rules in Title 4 apply to juvenile proceedings when the juvenile rules of Chapter 900 are silent:

> Nothing is contained in Rule 900 or the Court's Article with respect to how matters, such as motions to suppress, are to be handled. Both the 900 Rules and the Court's Article have very specific provisions in certain areas, and then there are these gaps. And it would seem to me logically, in order to fill in the gaps, if it's not specifically mentioned, Rule 1–101, by not excluding juvenile causes, seems to suggest that Title 4 does apply unless there is something to the contrary.
>
>       \*     \*     \*     \*     \*     \*
>
> [E]ven though this is the Division of Juvenile Causes, it is the Circuit Court. I am a Circuit Court Judge. This is the Circuit Court. I'm assigned to this division and, therefore, this rule applies to my Court, just like it would if I were sitting in the adult felony rotation.

Dissatisfied with this ruling, the appellant appealed to the Court of Special Appeals. Prior to review by the intermediate appellate court, we granted certiorari on our own motion.

The appellant argues that Chapter 900 of the Maryland Rules of Procedure contain the exclusive rules governing juvenile proceedings. More particularly, he asserts there is nothing within these rules requiring him to file a pre-adjudicatory motion to suppress. The essence of his argument is that because juvenile proceedings are civil in nature, the criminal rules of Title 4 do not apply to juvenile proceedings. The appellant concludes that the juvenile court erroneously ruled that he was required to raise his motion to suppress prior to the adjudicatory hearing.

The State argues that because the juvenile rules do not deal with motions to suppress in juvenile proceedings, the juvenile court could look only to Title 4 for guidance. It follows, the State contends, that the rules in Title 4 are applicable to

juvenile proceedings when there is no guidance within the juvenile rules themselves. The State alternatively suggests that even if the Master and circuit court erred, the proper remedy would be to remand this case to adjudicate the merits of the appellant's motion rather than to reverse the adjudication of delinquency.

## II.

The proper resolution of this case requires us to consider the pertinent procedural rules in light of the history and underlying policies of the juvenile court. As the following discussion will show, the criminal rules under Title 4 of the Maryland Rules do not apply to juvenile proceedings, and thus a pre-adjudicatory motion is not required to preserve an objection to the admissibility of evidence at an adjudicatory hearing.

## A.

Prior to the beginning of the twentieth century, under the common law view prevalent throughout the country, children above the age of seven were tried as adults. *In re Johnson,* 254 Md. 517, 521, 255 A.2d 419, 421 (1969), *appeal dismissed,* 403 U.S. 926, 91 S.Ct. 2257, 29 L.Ed.2d 706 (1971). They were afforded the same legal protections and received the same punishments as adult criminal offenders. *Id.* In the early part of this century, however, " 'a tidal wave of reform, put in motion by such persons as Judge Julian Mack and the leaders of the Jane Addams School, resulted in a national outcry against the resulting barbarism, as it appeared to them to be, of treating children and juveniles the same as adults.' " *Id.* at 521–22, 255 A.2d at 421 (quoting Fortas, *Equal Rights—For Whom?* 42 N.Y.U.L.Rev. 401, 405–06 (1967)).

Influenced by this national outcry, jurisdictions throughout the country began creating separate systems of courts that followed their own sets of principles for juvenile offenders. *Id.* at 522, 255 A.2d at 421. Under an extension of the doctrine of *parens patriae,* these separate systems viewed

juvenile offenders to be in need of protection and rehabilitation rather than punishment. *Id.* at 522, 255 A.2d at 422. In contrast to the adversarial nature of the adult system, in these systems, criminal charges were not brought against juvenile offenders. Moreover, juvenile proceedings were informal and flexible in nature, psychiatric and psychological assistance was sought, the rules of evidence were relaxed, and many proceedings were not open to the public. *Id.* at 522, 255 A.2d at 422.

In line with this trend, a separate system for juvenile offenders, civil in nature, evolved in Maryland. *Id.* at 522–23, 255 A.2d at 422. Today, this system is governed by the Juvenile Causes Act, Maryland Code (1974, 1989 Repl.Vol., 1993 Cum.Supp.), §§ 3–801 to –837 of the Courts and Judicial Proceedings Article.

Although juvenile proceedings are not criminal in nature, the Supreme Court has held that many of the constitutional safeguards afforded criminal defendants are applicable to juveniles.[1] This was aptly noted by Judge Moylan in *In re Devon T.*, 85 Md.App. 674, 584 A.2d 1287 (1991):

> Under the initially prevailing philosophy that the State was acting in delinquency cases as *parens patriae* (sovereign parent of the country), the State was perceived to be not the retributive punisher of the child for its misdeeds but the paternalistic guardian of the child for its own best interests. Under such a regime, the moral responsibility or blameworthiness of the child was of no consequence. Morally responsible or not, the child was in apparent need of the State's

---

1. *See In re Gault,* 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967) (juvenile entitled to notice of charges, counsel, privilege against self-incrimination, and right to confront and cross-examine witnesses); *In re Winship,* 397 U.S. 358, 365–66, 90 S.Ct. 1068, 1073, 25 L.Ed.2d 368, 376 (1970) ("civil labels and good intentions do not themselves obviate the need for criminal due process safeguards in juvenile courts"); *c.f. In re William A.,* 313 Md. 690, 548 A.2d 130 (1988) (juvenile entitled to common law infancy defense); *but see McKeiver v. Pennsylvania,* 403 U.S. 528, 91 S.Ct. 1976, 29 L.Ed.2d 647 (1971) (Constitution does not require trial by jury in adjudicative phase of state juvenile proceeding).

rehabilitative intervention and the delinquency adjudication was but the avenue for such intervention.

\* \* \* \* \* \*

Over the course of the century, however, buffeted by unanticipated urban deterioration and staggering case loads, the reforming vision of Judge Julian Mack and the other founders of the movement faded. Although continuing to stress rehabilitation over retribution more heavily than did the adult criminal courts, delinquency adjudications nonetheless took on, in practice if not in theory, many of the attributes of junior varsity criminal trials. The Supreme Court, in *In re Gault*, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967), and *In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970), acknowledged this slow but inexorable transformation of the juvenile court apparatus into one with increasingly penal overtones. It ultimately guaranteed, therefore, a juvenile charged with delinquency most of the due process protections afforded an adult charged with crime.

*Id.* 85 Md.App. at 682–84, 584 A.2d at 1291.

■ Despite any penal overtones the juvenile justice system may have acquired over the years since *In re Gault*, *supra*, and its progeny, however, the Juvenile Causes Act gives clear indication that juvenile proceedings are not criminal matters and that they retain their "special and informal nature." *See In re Fletcher*, 251 Md. 520, 533, 248 A.2d 364, 372 (1967), *cert. denied*, 396 U.S. 852, 90 S.Ct. 112, 24 L.Ed.2d 101 (1969). This philosophy is reflected in the purposes statement of § 3–802 of the Juvenile Causes Act:

(a) The purposes of this subtitle are:

(1) To provide for the care, protection, and wholesome mental and physical development of children coming within the provisions of this subtitle; and to provide for a program of treatment, training, and rehabilitation consistent with the child's best interests and the protection of the public interest;

(2) To remove from children committing delinquent acts the taint of criminality and the consequences of criminal behavior;

(3) To conserve and strengthen the child's family ties and to separate a child from his parents only when necessary for his welfare or in the interest of public safety;

(4) If necessary to remove a child from his home, to secure for him custody, care, and discipline as nearly as possible equivalent to that which should have been given by his parents;

(5) To provide judicial procedures for carrying out the provisions of this subtitle.

This idea is further reflected in § 3–824(a)(1) of the Act which states that "[a]n adjudication of a child pursuant to this subtitle is not a criminal conviction for any purpose and does not impose any of the civil disabilities ordinarily imposed by a criminal conviction."

The Maryland Courts have consistently construed the laws governing juvenile causes to reflect the principle that juvenile proceedings are special in nature and are not criminal proceedings. Interpreting the purposes of the Juvenile Causes Act, Chief Judge Murphy, writing for the Court of Special Appeals in *In re Hamill*, 10 Md.App. 586, 271 A.2d 762 (1970), stated that "[b]y so providing it is clear that the Legislature intended no departure in philosophy from that underlying previous judicial court enactments in Maryland, as interpreted by the Court of Appeals...." *Id.* at 590, 271 A.2d at 764; *see Johnson*, 254 Md. at 522, 255 A.2d at 422 (underlying concept of juvenile proceedings is protection of juvenile; judges think not in terms of guilt, but of juvenile's need for protection and rehabilitation); *Fletcher*, 251 Md. at 533, 248 A.2d at 372 ("[J]uvenile court proceedings are of a special and informal nature."); *In Matter of Cromwell*, 232 Md. 409, 415, 194 A.2d 88, 91 (1963) (proceedings of juvenile court are not criminal in nature); *Moquin v. State*, 216 Md. 524, 528, 140 A.2d 914, 916 (1958) (juvenile act does not contemplate the punishment of

children where they are found to be delinquent, but rather an attempt to correct and rehabilitate them).

■ From an analysis of the Juvenile Causes Act and case law, it is clear that it was the intent of the General Assembly to create a separate system of courts, procedure and method of treatment for juveniles. This extensive system is civil in nature and is not a criminal proceeding.

## B.

■ Upon this background, we must now determine whether the criminal rules of Title 4 are applicable to juvenile proceedings. We have repeatedly stated that the canons and principles we follow in construing statutes apply equally to an interpretation of our rules. *New Jersey v. Strazzella,* 331 Md. 270, 274, 627 A.2d 1055, 1057 (1993); *Beales v. State,* 329 Md. 263, 271, 619 A.2d 105, 109 (1993). When construing a rule, we must first look to the words of the rule, giving them their ordinary and natural meaning. *Beales,* 329 Md. at 271, 619 A.2d at 109. If the words of the rule are clear and unambiguous, our analysis ordinarily ends. *Strazzella,* 331 Md. at 274, 627 A.2d at 1057. Generally, it is only when the words of the rule are ambiguous that we must look toward other sources to glean the intent of the rule. *Id.* Furthermore, we must give effect to the entire rule, "neither adding, nor deleting, words in order to give it a meaning not otherwise evident by the words actually used." *Id.* at 274–75, 627 A.2d at 1057. Our mission is to give the rule a reasonable interpretation in tune with logic and common sense. *Id.* at 275, 627 A.2d at 1057.

In doing so, we must look at the language of Maryland Rule 1–101, *Applicability.* This rule states in pertinent part:

Title 1 applies to procedure in all courts of this State, except the Orphans' Courts and except as otherwise specifically provided. Title 2 applies to civil matters in the circuit courts, except for Juvenile Causes under Rules 901 through 922 and except as otherwise specifically provided or necessarily implied. Title 3 applies to civil matters in the District Court, except as otherwise specifically provided or necessar-

ily implied. Title 4 applies to criminal matters, post conviction procedures, and expungement of records in the District Court and the circuit courts.

To like effect, Rule 4–101, *Applicability*, under Title 4 states that "[t]he rules in this Title govern procedure in all criminal matters, post conviction procedures, and expungement of records in both the circuit courts and the District Court, except as otherwise specifically provided."

The basis of the circuit court's decision in overruling the appellant's exceptions to the Master's recommendations was the plain meaning of Rule 1–101: juvenile causes are specifically excluded from the civil rules under Title 2, but no like exclusion exists from the criminal rules under Title 4. The circuit court reasoned that "logically, in order to fill in the gaps, if it's not specifically mentioned, Rule 1–101, by not excluding juvenile causes, seems to suggest that Title 4 does apply unless there is something to the contrary."[2] We disagree.

We find the language in both Rule 1–101 and 4–101 to be clear and unambiguous. Title 4 *only* applies to "criminal matters, post conviction procedures, and expungement of records in the District Court and the circuit courts." Neither rule provides that Title 4 applies to juvenile proceedings. Because Title 4 deals solely with criminal matters, it was unnecessary for the drafters of the rule to expressly exclude juvenile causes from Title 4. Since juvenile proceedings are civil in nature and are governed by the specific rules of procedure set out under Chapter 900, it was necessary for the drafters of Rule 1–101 to expressly exclude juvenile causes from the Title 2 civil rules of procedure. In light of the clear and unambiguous language of Rules 1–101 and 4–101, the criminal rules of procedure therefore do not apply to juvenile proceedings.

---

2. We recognize that Chapter 900 of the Maryland Rules does not have a provision pertaining to motions to suppress in juvenile proceedings.

Courts from other jurisdictions have also held that criminal rules of procedure are inapplicable to juvenile proceedings. In *In Interest of Stoutzenberger,* 235 Pa.Super. 500, 344 A.2d 668, 670 n. 2 (1975), the Superior Court of Pennsylvania held that the Pennsylvania Rules of Criminal Procedure generally are not applicable to juvenile proceedings. In *In re J.D.R.,* 637 A.2d 849 (D.C.1994), the District of Columbia Court of Appeals noted that "[t]here is no counterpart in the Superior Court Juvenile Rules to Rule 11(a)(2) of the Criminal Rules, which allows the court to accept a conditional plea of guilty. Absent such a rule, it does not appear that a conditional plea is permissible in juvenile proceedings." *Id.* at 849 n. 1. Likewise, in *D.K.D. v. State,* 470 So.2d 1387 (Fla.1985), the Supreme Court of Florida held that the juvenile rule providing for motions to dismiss in juvenile proceedings was designed to avoid intricate pre-trial maneuverings provided for in criminal cases. *Id.* at 1389. The Florida court, finding no incorporation of the criminal rules into the juvenile rules, declined to apply the criminal rules. *Id.; cf. State v. Freeman,* 38 Wash. App. 665, 687 P.2d 858 (1984) (Rules expressly provided for application of criminal rules to juvenile proceedings).

We find that neither the Maryland Rules nor the Juvenile Causes Act provides for the application of the criminal rules of Title 4 to juvenile proceedings. Furthermore, we find no implied incorporation of the criminal rules into the juvenile rules. Juvenile proceedings are governed by a separate, pervasive scheme of specific statutes and rules developed by the Maryland General Assembly and the Court of Appeals.

■ We hold that Title 4 of the Maryland Rules, which governs procedure in criminal cases, is not applicable to juvenile proceedings. Accordingly, the juvenile court erred in holding that the appellant waived his right to object solely because he failed to comply with the rules under Title 4. In light of this holding, we remand this case to the juvenile court for further proceedings consistent with this opinion.

*JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY VACATED. CASE REMANDED TO THAT*

*COURT FOR FURTHER PROCEEDINGS CONSISTENT
WITH THIS OPINION. COSTS TO BE PAID BY THE
STATE.*