60 A.3d 90

SMITH–MYERS CORPORATION d/b/a
Smith–Myers Mortgage Group

v.

Ada SHERILL, et al.

No. 2034, Sept. Term, 2011.

Court of Special Appeals of Maryland.

Jan. 24, 2013.

496

Jason W. Shoemaker (Rolle & DeLorenzo, on the brief) Frederick, MD, for appellant.

Robert K. Epstein, Silver Spring, MD, for appellee.

Panel: KEHOE, BERGER, RONALD B. RUBIN (Specially Assigned) JJ.

KEHOE, J.

Appellant, Smith–Myers Corporation d/b/a Smith–Myers Mortgage Group ("Smith–Myers"), appeals a default judgment entered against it in favor of appellees, Ada Sherill and James Mills,[1] by the Circuit Court for Prince George's County. Smith–Myers presents two issues for our review, which we have re-phrased:

I. Did the circuit court err by entering the default judgment?

II. Did the circuit court abuse its discretion in denying Smith–Myers's motion to vacate the default judgment?

We affirm the judgment of the circuit court. We conclude that the circuit court did not err by entering the default judgment against Smith–Myers because: 1) Rule 2–613(f) requires the court to satisfy itself that notice was mailed to the defaulting party's "last known address", and not, as Smith–Myers asserts, to the defaulting party's correct mailing address; 2) Smith–Myers failed to satisfy its continuing obligation to supply the court with its most recent address, and, therefore, failed to establish that 9200 Basil Court, instead of 9700 Basil Court, was its last known address under Rule 2–613(b); and 3) Smith–Myers had, in any event, actual notice of

---

1. The record indicates that Mr. Mills died at some point during the pendency of this litigation. He is still nominally a party.

the order of default and the hearing on damages and yet did not move to vacate the order and did not attend the hearing. Moreover, we conclude that the circuit court did not err in denying Smith–Myers's motion to vacate the default judgment because Smith–Myers failed to establish an equitable basis to excuse its failure to attend court hearings or to move to vacate the order of default on a timely basis.

## FACTUAL AND PROCEDURAL BACKGROUND

On January 4, 2007, appellees filed a six-count complaint [2] against four parties—Patricia Lawson, Johnny Beans,[3] Smith–Myers (appellant), and Beltway Title & Abstract, Inc.—alleging that the defendants engaged in an elaborate fraudulent scheme to deprive them of the equity value of their home. The scheme involved, among other things, fraudulent and coercive conduct by Lawson to induce appellees to enter into an unconscionable mortgage loan from Smith–Myers and conditioning the loan upon excessive fees for unnecessary and fictitious services. Appellees alleged that Lawson was a loan officer for Smith–Myers, Beans was the proxy buyer of the mortgaged property, Smith–Myers was the company that provided financing for the transaction, and Beltway Title was a real estate title insurance agency that conducted a settlement alleged to have been instrumental in the defendants' efforts. On May 30, 2007, appellees filed an amended complaint adding John J. Dwyer, the owner of Beltway Title, as a fifth defendant.

Early on in the proceedings, the circuit court dismissed the claims against Beans without prejudice. As we will explain in greater detail below, on March 16, 2009, the circuit court entered a default judgment against Smith–Myers in the amount of $627,277.68. Smith–Myers moved to vacate the

**2.** The complaint alleged claims for fraud, misrepresentation, negligent misrepresentation, civil conspiracy, intentional infliction of emotional distress, and recision.

**3.** Appellees contend that Johnny Beans is actually a fictitious character created to further the mortgage fraud scheme of the other defendants.

judgment, without success, and then filed a motion for reconsideration, which the circuit court denied. Smith–Myers filed an appeal to this Court although the circuit court had not yet resolved the claims against Lawson, Dwyer, and possibly Beltway Title.[4] *See Smith–Myers Corp. v. Sherill ("Smith–Myers I")*, No. 2234, September Term, 2009, filed April 6, 2011. In *Smith–Myers I*, we dismissed the appeal as premature because there was no final judgment and remanded the case to the circuit court for further proceedings. On remand, the circuit court dismissed the claims against Lawson, Dwyer and Beltway Title, thus rendering the judgment against Smith–Myers final. This appeal followed.

We now turn to more a detailed description of the events that led to the entry of the default judgment and Smith–Myers's efforts to vacate the same.

Appellees' original complaint stated that the mailing address of Smith–Myers was (emphasis added):

Smith–Myers Mortgage Group
9700 Basil Court, Suite 100
Largo, MD 20774

Appellees concede that the 9700 Basil Court address was incorrect, and that Smith–Myers's mailing address is **9200 Basil Court, Suite 100, Upper Marlboro, MD 20774**. The parties also agree that 9700 Basil Court does not, in fact, exist, and further, that Largo and Upper Marlboro both reference the same location for the purposes of the United States Postal Service. This notwithstanding, there is no dispute that

---

**4.** As we explained in *Smith–Myers I*:

Also on October 15, 2008, the circuit court dismissed the claims against Beltway Title as they were to be submitted to arbitration pursuant to a prior agreement with appellees. However, on December 9, 2009 (which was after the date of the filing of the notice of appeal but before the record of this case was transmitted to this Court), appellee Ada Sherill filed a motion to compel Beltway Title to submit to arbitration. The record that we have before us does not indicate the current status of Beltway Title as a party to these proceedings.

Op. at ——. Beltway was definitively dismissed from this case on October 21, 2011.

Smith–Myers was properly served by personal service. The affidavit of service for the process server indicates that he personally served the summons and the complaint on Smith–Myers at (emphasis added):

Smith–Myers Mortgage Group
9200 Basil Court, Suite 100
Largo, MD 20774

Herbert Callihan, at the time a Maryland attorney, filed an answer on behalf of Smith–Myers but the answer did not correct or otherwise reference the complaint's use of the 9700 Basil Court address.

Approximately one year later, on February 21, 2008, Callihan filed a Withdrawal of Appearance/Substitution of Counsel indicating that he had withdrawn as counsel for Smith–Myers and that Larry N. Burch had entered his appearance on Smith–Myers's behalf. This document made no mention of an address for Smith–Myers. Burch remained Smith–Myers's attorney for about three months.

On April 14, 2008, Burch filed a request to withdraw his appearance from the case. Attached to this request was a certificate of service indicating that he had mailed a copy of his motion to Jeffrey Smith, the president of Smith–Myers, at the following address:

Jeffrey Smith
Smith–Myers Mortgage Group
9200 Basil Court, Suite 100
Upper Marlboro, MD 20774

Also attached to the request as a captioned, original document exhibit was Smith–Myers's "Consent to Withdraw" which likewise listed 9200 Basil Court as the address for Smith–Myers. The circuit court granted Burch's request on May 19, 2008 in an order which also stated, in pertinent part (emphasis in original deleted, emphasis in bold added):

ORDERED, **that Defendant Smith–Myers Mortgage Group is hereby advised that** pursuant to Md. Rule 2–131(a)(2) a person other than an individual may enter an

appearance only by an attorney, thus **as a Corporation they must be represented by a Maryland attorney;**

ORDERED, this case be sent to the Office of Calender Management for a Status Hearing to be set. . . .

The clerk's office mailed a copy of this order to Smith at the 9200 Basil Court address. There is no dispute that Smith–Myers received a copy of this order. In addition, there is no dispute that, at the time of his withdrawal, Burch advised Smith–Myers to retain new counsel and that Smith–Myers "was required to appear at court on all dates set by the Court."[5]

However, no attorney entered his or her appearance on behalf of Smith–Myers in the case for approximately ten months. During this period, the circuit court held three status conferences—on June 6, 2008; October 3, 2008; and December 19, 2008—all of which Smith–Myers failed to attend. Notices of these conferences were sent to Smith–Myers at the 9700 Basil Court address. Smith–Myers asserts that it never received notice of the status conferences because of the inaccurate address, and that this lack of proper notice explains its absences. It is, however, apparent that *someone* received these notices, as none were returned to the circuit court as undeliverable.[6]

On December 11, 2008, appellees filed what they called a "Motion for Default Judgment and Other Relief", which was treated by the circuit court as a request for an order of default pursuant to Rule 2–613(b). In their request, appellees asserted that Smith–Myers's last known address was "**9700** Basil Court, Suite 100, Largo, MD 20774". (Emphasis added).

---

**5.** In an affidavit submitted as an exhibit to appellees' opposition to Smith–Myers's motion to vacate, Burch stated that "[p]rior to the signing of the court order that permitted my withdrawal, my office properly advised the client that it was required to appear at court on all dates set by the Court and that it was necessary to retain new counsel." Smith–Myers does not dispute Burch's statement.

**6.** The record of this case is replete with notices to other parties that were returned as undeliverable.

At the status conference held on December 19, 2008, the circuit court issued an order of default against Smith–Myers. As with the status conference notices, this order was mailed to Smith–Myers at the **9700** Basil Court address, but a copy of the order was also mailed to Callihan. According to Smith–Myers, Callihan informed the company that an order of default had been issued against it.[7] Despite this knowledge, Smith–Myers did not move to vacate the order of default on a timely basis. *See* Md. Rule 2–613(d) ("The defendant may move to vacate the order of default within 30 days after its entry.").

On March 6, 2009, the circuit court conducted an *ex parte* hearing on damages. Notice of this hearing was again sent to "Smith–Myers Mortgage Group, 9700 Basil Court, Suite 100, Largo, MD 20774", as well as to Callihan. The record indicates that Smith–Myers also had knowledge of this hearing,[8] but it did not attend. After an evidentiary presentation by appellees, the circuit court entered a default judgment against Smith–Myers in the amount of $627,277.68 plus costs.

On April 6, 2009, Smith–Myers, now represented by counsel, filed a Motion to Vacate Default Judgment, blaming its derelictions on an alleged lack of notice and on a disbarred attorney named Peter Maignan, and seeking to have the judgment set aside. We will discuss the grounds advanced by

---

**7.** In its motion to vacate the default judgment, Smith–Myers represented that (numbering removed; bracketed material added):

On December 19, 2008, the Court granted Plaintiffs' Motion for Default Judgment [i.e., the order of default]. Court docket entries indicate a copy of this Order was sent to Smith–Myers's former attorney, Mr. Callihan. However, Mr. Callihan was no longer representing Smith–Myers in this matter.... Mr. Callihan did contact Smith–Myers to inform them of the order.

**8.** In its motion to vacate, Smith–Myers asserted:

Upon receiving this information, Smith–Myers immediately notified Mr. Maignan, relying on his previous assertion that he was still representing them. Mr. Maignan informed Smith–Myers that he will be present at the hearing.... However, Mr. Maignan never appeared on behalf of Smith–Myers.

The only hearing scheduled by the circuit court after entering the order of default was the March 6, 2009 hearing on damages.

Smith–Myers in Part II of this opinion. The circuit court denied this motion without a hearing and without discussion on August 29, 2009.

On September 22, 2009, Smith–Myers filed a Motion for Reconsideration of Denial of Motion to Vacate Default Judgment, repeating its prior arguments. The court denied this motion without a hearing and without discussion on October 21, 2009.

On November 23, 2009, Smith–Myers noted an appeal, which, as previously explained, we dismissed in *Smith–Myers I.* On remand, at the request of both parties, the circuit court dismissed the claims against the remaining defendants and Smith–Myers noted this appeal on November 10, 2011.

### DISCUSSION

 The circuit court denied the motion to vacate and the motion for reconsideration without hearings and without any explanation of its grounds. In such circumstances, we assume that the circuit court carefully considered all of the asserted grounds and determined that all or at least enough of them merited the decisions ultimately implemented. *See Piscatelli v. Smith,* 197 Md.App. 23, 37, 12 A.3d 164 (2011), *aff'd,* 424 Md. 294, 35 A.3d 1140 (2012) (citations omitted). Furthermore, as we explained in *Davidson v. Seneca Crossing Section II Homeowner's Ass'n,* 187 Md.App. 601, 628, 979 A.2d 260 (2009):

> The trial judge need not articulate each item or piece of evidence she or he has considered in reaching a decision. Unless it is clear that he or she did not, *we presume the trial judge knows and follows the law.* The fact that the court did not catalog each factor and all the evidence which related to each factor does not require reversal ... Furthermore, [i]n reviewing a judgment of a trial court, the appellate court will search the record for evidence to support the judgment and will sustain the judgment for a reason plainly appearing on the record whether or not the reason was expressly relied upon by the trial court.

(Quotation marks and citations omitted; emphasis added by *Davidson.*)

## I.

### The Entry of the Default Judgment

In its brief, Smith–Myers states (citations to the record omitted):

In the case sub judice, the Order of Default and subsequent default judgment were based solely on Smith–Myers's failure to appear at three (3) status hearings. However, the notices of all three (3) status hearings and the Order of Default were mailed to the wrong address. . . . Moreover, the record is clear from motions to vacate the default judgment and responses thereto that Smith–Myers never received notice of the missed status hearings or the resulting Order of Default.[9] The provisions of Rule 2–613(f) are clear that it was the Circuit Court for Prince George's County's responsibility to ensure that notice was properly mailed to Smith–Myers prior to entering a judgment by default. . . .

The Circuit Court for Prince George's County, Maryland committed reversible error when it entered a judgment by order of default pursuant to Maryland Rule 2–613(f) without having discovered that the notice required by Rule 2–613(c) was sent to the wrong address. Accordingly, the default

---

**9.** This statement is not consistent with Smith–Myers's position in the circuit court proceedings. In its motion to vacate the default judgment, Smith–Myers averred:

On December 19, 2008, the Court granted Plaintiff's Motion for Default Judgment against Smith–Myers. Court docket entries indicate that a copy of this Order was sent to Smith–Myers's former attorney, Mr. Callihan. . . . Mr. Callihan did contact Smith–Myers to inform them of the order.

The circuit court's December 19, 2008 order was the order of default against Smith–Myers. However, in an affidavit attached to Smith–Myers's motion to vacate the default judgment, Jeffrey Smith, the president of Smith–Myers, stated that he did not receive "notice of the order granting Plaintiff's Motion for Default Judgment." Smith–Myers makes no attempt to explain the discrepancy.

judgment against Smith–Myers must be vacated and this matter remanded for adjudication on its merits.

■ These arguments are unpersuasive. Contrary to Smith–Myers's assertions, Rule 2–613 does not require the circuit court to "ensure that notice was properly mailed to Smith–Myers prior to entering a judgment." Instead, the rule requires the court to satisfy itself that notice of the entry of an order of default was mailed to the defaulting defendant's last known address. It is the duty of a party, not the court, to ensure that the court has the parties' current and correct mailing address. Smith–Myers failed to do this. We begin our analysis with an overview of Rule 2–613.

Rule 2–613 governs default judgments in circuit courts. Under the rule, "If the time for pleading has expired and a defendant has failed to plead as provided by these rules, the court, on written request of the plaintiff, shall enter an order of default." Rule 2–613(b). The defendant has 30 days from the date the order of default is entered to file a motion to vacate the order. Rule 2–613(d). "The motion shall state the reasons for the failure to plead and the legal and factual basis for the defense to the claim." *Id.* "If the court finds that there is a substantial and sufficient basis for an actual controversy as to the merits of the action and that it is equitable to excuse the failure to plead, the court shall vacate the order." Rule 2–613(e). If no motion to vacate is filed or the motion is properly denied by the court, and the plaintiff so requests, the court may enter a default judgment against the non-responsive defendant if the court is satisfied that it has jurisdiction to enter the judgment and that proper notice was effectuated upon the defendant. Rule 2–613(f). "A default judgment entered in compliance with this Rule is not subject to the revisory power under Rule 2–535(a) [10] except as to the relief granted." Rule 2–613(g).

■ " '[A] default judgment is considered more akin to an admission of liability than to a punitive sanction.' " *Franklin*

---

**10.** *See* Part II, *infra.*

*Credit Management Corp. v. Nefflen,* 208 Md.App. 712, 57 A.3d 1015 (2012) (quoting *Porter Hayden Co. v. Bullinger,* 350 Md. 452, 472, 713 A.2d 962 (1998)). However,

> Md. Rule 2–613(d) provides an opportunity for the defendant to move to vacate an order of default and explain the legal and factual basis for any defense of the claim. If the defendant does so, the court must then determine whether "there is a substantial and sufficient basis for an actual controversy as to the merits of the action," and whether "it is equitable to excuse the failure to plead." Rule 2–613(e). This is the defendant's opportunity to have the court assess the viability of the legal claims.

*Nefflen,* 208 Md.App. at 728, 57 A.3d 1015. Instead, "[i]f there is no vacation of the default order, the court 'may enter a judgment by default' providing it is satisfied that it has personal jurisdiction and that the requisite notice has been mailed." *Carter v. Harris,* 312 Md. 371, 374, 539 A.2d 1127 (1988). " '[These rules are] a means of relief against the delay and neglect of defendants.' " *Glass v. Glass,* 284 Md. 169, 172, 395 A.2d 485 (1978), *superseded by statute as noted* in *Davis v. Davis,* 97 Md.App. 1, 12–13, 627 A.2d 17 (1993) (quoting Edgar Miller, EQUITY PROCEDURE IN THE COURTS OF MARYLAND § 284, at 354 (1897)).

Subsections (b), (c), and (f) of Rule 2–613 address various aspects of the notice required before a court can enter a default judgment against a defendant. These sections provide (emphasis added):

\* \* \*

(b) **Order of default.** If the time for pleading has expired and a defendant has failed to plead as provided by these rules, the court, on written request of the plaintiff, shall enter an order of default. *The request shall state the last known address of the defendant.*

(c) **Notice.** Promptly upon entry of an order of default, the clerk shall issue a notice informing the defendant that the order of default has been entered and that the defendant may move to vacate the order within 30 days after its entry.

*The notice shall be mailed to the defendant at the address stated in the request and to the defendant's attorney of record, if any.* The court may provide for additional notice to the defendant.

\* \* \*

(f) **Entry of judgment.** If a motion [to vacate] was not filed under section (d) of this Rule or was filed and denied, the court, upon request, may enter a judgment by default that includes a determination as to liability and all relief sought, *if it is satisfied* (1) that it has jurisdiction to enter the judgment and (2) *that the notice required by section (c) of this Rule was mailed.* If, in order to enable the court to enter judgment, it is necessary to take an account or to determine the amount of damages or to establish the truth of any averment by evidence or to make an investigation of any matter, the court may rely on affidavits, conduct hearings, or order references as appropriate, and, if requested, shall preserve to the plaintiff the right of trial by jury.

Smith–Myers does not dispute that the circuit court mailed a document containing the information required by Rule 2–613(c) to the address indicated in appellees' request for order of default—9700 Basil Court, Suite 100. Smith–Myers asks us to interpret Rule 2–613(f) as imposing an additional requirement upon a circuit court related to notice before entering judgment; namely, to satisfy itself that the last known address designated in the request for an order of default is, in fact, the defaulting party's correct mailing address. There are several problems with this argument.

First, Smith–Myers has offered no authority for its proposition and the plain language of the rule is contrary to its position. As the Court of Appeals summarized in *In re Victor B.*, 336 Md. 85, 646 A.2d 1012 (1994):

The canons and principles we follow in construing statutes apply equally to an interpretation of our rules. When construing a rule, we must first look to the words of the rule, giving them their ordinary and natural meaning. If the words of the rule are clear and unambiguous, our

analysis ordinarily ends. Generally, it is only when the words of the rule are ambiguous that we must look toward other sources to glean the intent of the rule. Furthermore, we must give effect to the entire rule, neither adding, nor deleting, words in order to give it a meaning not otherwise evident by the words actually used. Our mission is to give the rule a reasonable interpretation in tune with logic and common sense.

*Id.* at 94, 646 A.2d 1012.

Applying these principles of interpretation to Smith–Myers's argument, there is nothing in Rule 2–613 that suggests that the circuit court carries the burden of ensuring that the order of default was sent to the defaulting party's correct mailing address. Indeed, in order to adopt such a position, we would be adding words to the rule, which, as just explained, we do not do.

Secondly, the history of Rule 2–613 underscores that the plain language of the rule is contrary to Smith–Myers's interpretation. This Court recounted that history in detail in *Armiger Volunteer Fire Co. v. Woomer*, 123 Md.App. 580, 720 A.2d 17 (1998), *cert. denied*, 352 Md. 619, 724 A.2d 21 (1999). "As originally drafted, Md. Rule 2–613 provided that the notice of order of default be mailed to the defaulting defendant at the address provided for him in the complaint without regard for whether he might have a more current mailing address." *Id.* at 590–91, 720 A.2d 17. In 1983, the Comment Review Committee for proposed changes to the rule recommended that this requirement be amended:

to take account of the fact that at the time of requesting an order of default the plaintiff may have a more recent or accurate address for the defendant than was provided in the complaint. The subcommittee suggests adding at the end of [present section (b) ] the following sentence: "The request shall state the last known address of the defendant." Consistent with the proposed change in [present section (b) ], the subcommittee suggests amending the penultimate sentence in [present section (c) ] by substituting the phrase

"stated in the request" for "specified in the pleading" and deleting the phrase "if any" following "address."

*Id.* at 591, 720 A.2d 17. These recommendations were ultimately adopted, thereby "eliminating the possibility that a notice of order of default would be mailed to a defaulting defendant at an outdated address provided in the complaint and maximizing the likelihood that the defaulting defendant indeed would be afforded the opportunity to challenge the entry of the default order." *Id.* Nowhere does this history suggest, as Smith–Myers argues, that Rule 2–613 requires, or was intended to require, a court to independently determine whether "the last known address" supplied by the moving party is, in fact, the correct mailing address of the party in default.

Finally, Smith–Myers does not explain how, at a practical level, a circuit court would be able to conduct the investigation that Smith–Myers proposes.

■ For these reasons, we conclude that Rule 2–613(f)'s requirement that the court satisfy [itself that the appropriate notice has been mailed to the defaulting party's last known address is met when the record is clear that the notice was mailed to the address indicated in the request for an order of default. It is incumbent upon the party seeking the order of default to supply the circuit court with the defaulting party's last known mailing address.

Having dispensed with Smith–Myers's suggested construction of Rule 2–613(f), we turn to whether the address to which the Rule 2–613(c) notice was sent—9700 Basil Court—was Smith–Myers's "last known address" for purposes of the Maryland Rules. We conclude that it was.

Rule 2–613(b) clearly imposes the obligation to provide the court with the defaulting party's last known address upon the party seeking an order of default. Answering whether appellees failed in their responsibility in this case is complicated by the fact that, when the order of default was requested, there were two possible "known" addresses for Smith–Myers—9700

Basil Court and 9200 Basil Court. To illustrate, we recite the relevant chronology: [11]

- January 4, 2007: Complaint filed by appellees, listing 9700 Basil Court as the address for Smith–Myers.

- January 26, 2007: Affidavit of the process server filed, stating that the summons and complaint were served on Smith–Myers at 9200 Basil Court.

- February 5, 2007: Smith–Myers filed its answer, making no reference to either the 9200 or the 9700 address.

- February 21, 2008: Callihan filed his Motion to Withdraw and Substitute Burch as counsel for Smith–Myers. No reference is made to either the 9200 or the 9700 address.

- April 14, 2008: Burch filed his Motion to Withdraw as counsel for Smith–Myers. The certificate of service attached to Burch's request, as well as Smith–Myers consent to the withdraw (attached as Exhibit 1 to the motion), show the 9200 Basil Court address. Neither the certificate nor the exhibit reference the 9700 address.

- May 19, 2008: The circuit court issues order granting Burch's motion and advising Smith–Myers to (i) retain new counsel and (ii) that their case would be set in for a status hearing. Order was mailed to 9200 Basil Court.

- June 6, 2008: Status hearing held. Smith–Myers did not attend. Notice of hearing sent to 9700 Basil Court.

- October 2, 2008: Status hearing held. Smith–Myers did not attend. Notice of hearing sent to 9700 Basil Court.

- December 11, 2008: Motion for an order of default filed by appellees. Motion listed 9700 Basil Court as the address for Smith–Myers.

- December 19, 2008: Status hearing held. Smith–Myers did not attend. Notice of hearing sent to 9700 Basil Court. Order of default entered against Smith–Myers at hearing. Order sent to 9700 Basil Court. Smith–Myers

---

11. The 9700 Basil Court address was also used in other filings by other parties; for example, Lawson's Notice of Bankruptcy.

subsequently concedes that it had notice of the order through Callihan, blaming its failure to file a motion to vacate on Maignan.

- March 6, 2009: Hearing on damages. Notice sent to 9700 Basil Court. Despite having knowledge of the hearing, Smith–Myers failed to attend. Subsequently blamed failure on Maignan. Judgment entered against Smith–Myers for $627,277.68. Judgment received by Smith–Myers at 9200 Basil Court.

- April 6, 2009: Smith–Myers filed a motion to vacate default judgment. Motion stated, for the first time in the litigation, that the 9700 address is incorrect.

Applying the benefit of hindsight to these facts, the last use of Smith–Myers's correct address (prior to the default judgment) was in 1) the certificate of service and the consent to withdraw attached to Burch's motion, and 2) the May 19, 2008 order. At that time, however, nothing in the record indicated that 9700 Basil Court was not *also* a correct address for Smith–Myers. Indeed, Smith–Myers failed to inform the court that the 9700 address was incorrect until its motion to vacate the default judgment, which was filed approximately two years and two months after Smith–Myers was served with the original complaint.

As we explained in *Estime v. King*, 196 Md.App. 296, 9 A.3d 148 (2010) (citing *Gruss v. Gruss*, 123 Md.App. 311, 718 A.2d 622 (1998)), a party has "a continuing obligation to furnish the court with her most recent address." *Id.* at 306, 9 A.3d 148. This obligation may be satisfied by filing a "pleading" or a "paper" with the court listing the correct address. *See Estime*, 196 Md.App. at 304–07, 9 A.3d 148 (quoting *Gruss*, 123 Md.App. at 320, 718 A.2d 622). The pertinent question before us is whether Smith–Myers satisfied its obligation to furnish its 9200 Basil Court address to the court by listing it in a pleading or paper.

The record contains only four instances where the correct 9200 address was listed—the affidavit of the process

server, the certificate of service and consent to withdraw (exhibit 1) attached to Burch's motion to withdraw appearance, and the May 19, 2008 order striking Burch's appearance. Neither the affidavit of the process server nor the May 19, 2008 order were filed by Smith–Myers. Thus, these documents do not satisfy Smith–Myers's obligation to provide a correct address. Likewise, the only pleading filed in this case by Smith–Myers—its answer—does not list an address for Smith–Myers.

Therefore, our determination rests on whether either the certificate of service or the exhibit attached to Burch's motion to strike his appearance constitutes a "paper" under the rule. Helpful in this determination is the Court of Appeals' analysis in *Duckett v. Riley*, 428 Md. 471, 52 A.3d 84 (2012), in which the Court considered whether a party's checking the "jury trial" box in the case information form required by Rule 16–202(b) met Rule 2–325's requirement that a request for a jury trial must be made "by filing a demand therefore in writing as either a separate paper or separately titled at the conclusion of a pleading...." The Court of Appeals explained:

> The Maryland Rules do not define the word, "paper." Nevertheless, we can state with certainty that "paper" is not equivalent to, or encompassed in, "pleading".... Nor is a completed case information report form a "pleading."
>
> \* \* \*
>
> The critical question to be answered is whether a case information report is, or can be, a "paper." That does not appear to be either the common understanding of the Maryland Bar and Bench, the hearing judge notwithstanding, or the ordinary and plain-language meaning of "paper."

*Id.* at 478–79, 52 A.3d 84. The Court concluded that a case information report was not a paper. It first noted that Rule 2–112(a) requires service of a "summons ... together with a copy of each paper filed and a blank copy of the information report form required ... by Rule 16–202(b) ...." 428 Md. at 479, 52 A.3d 84. "Thus, because the Rule refers to both

'paper' and 'information report,' the term 'paper' does not embrace a case information report." *Id.* at 479–80, 52 A.3d 84. Applying the same logic to different provisions of the Maryland Rules, we conclude that neither the certificate of service nor Smith–Myers's consent to withdraw satisfied Smith–Myers's obligation to furnish an accurate address.

Certificates of service are well-known to the Maryland Rules. To this end, Rule 1–323 provides that:

> The clerk shall not accept for filing any pleading or other paper requiring service, other than an original pleading, unless it is accompanied by an admission or waiver of service or a signed certificate showing the date and manner of making service.

*See also Lovero v. Da Silva,* 200 Md.App. 433, 443–44, 28 A.3d 43 (2011) (discussing Rule 1–323). On its face, this rule distinguishes between a "pleading or other paper" and a certificate of service. Applying the *Duckett* analysis leads us to conclude that the certificate of service attached to Callihan's notice of withdrawal and substitution of counsel is not a paper under the Rules. *See Duckett,* 428 Md. at 479–80, 52 A.3d 84.

A written motion is certainly a "paper," as the term is used in the Maryland Rules. As with certificates of service, the attachment of exhibits to a motion is well-known to the Maryland Rules. Rule 2–311(c) states, in pertinent part, that:

> A party shall attach as an exhibit to a written motion or response any document that the party wishes the court to consider in ruling on the motion or response unless the document is adopted by reference as permitted by [other rules].

This rule distinguishes between a "motion", on one hand, and exhibits attached to the motion, on the other. In our view, this establishes that an exhibit attached to a motion is a different document than the written motion itself. A consideration of other relevant rules lends further support to this notion. For example, Rule 1–301 provides that (emphasis added):

**a) Caption and titling.** *Every pleading and paper filed shall contain a caption* setting forth (1) the parties or, where appropriate, the matter, (2) the name of the court, (3) the assigned docket reference, and (4) a brief descriptive title of the pleading or paper which indicates its nature. An original pleading shall contain the names and addresses, including zip code, of all parties to the action if the names and addresses are known to the person filing the pleading. If the address of a party is unknown, the pleading shall so state. In other pleadings and papers, it is sufficient to state the name of the first party on each side with an appropriate indication of other parties.

\* \* \*

**e) Existing documents.** Sections (a), (c), and (d) do not apply to any document already in existence which is filed as an exhibit to a pleading or paper. *However, they do apply to any document prepared as an exhibit.*

Subsection (a) indicates that there are differences between a "paper" and an exhibit attached to a paper. Subsection (e) suggests that exhibits are not papers, as they do not need to comply with the mandatory requirements for papers iterated in section (a) unless they are original documents.[12] Similarly, Rule 1–311(a), which provides (emphasis added):

> Every pleading and paper of a party represented by an attorney shall be signed by at least one attorney who has been admitted to practice law in this State and who complies with [the requirements for a signing attorney]. Every pleading and paper of a party who is not represented by an attorney shall be signed by the party. Every pleading or paper filed shall contain the address and telephone number of the person.

suggests that the exhibit to Burch's motion was not a paper because it was not signed by a Maryland attorney. At the

---

**12.** *See J.T. Masonry Co. v. Oxford Constr. Services, Inc.,* 74 Md.App. 598, 609, 539 A.2d 694 (1988) (holding that "papers" must conform to the requirements set forth in section (a)).

time the motion to withdraw was filed, Smith–Myers was represented by an attorney—Burch. Taken together, these rules convince us that exhibits attached to a motion are not "papers" and thus cannot provide a basis to satisfy a defendant's obligation to furnish the court with its most recent address. Therefore, the consent to withdraw exhibit is not a paper.

Ultimately, having filed no pleadings or papers listing the 9200 address, Smith–Myers has failed to fulfill its obligation to furnish its correct address to the court. Because of this failure, we cannot say that 9200 Basil Court, as opposed to 9700 Basil Court, was Smith–Myers's "last known address" on the record before us. It follows, then, that the appellees fulfilled their obligation to provide the court with Smith–Myers's last known address when they provided the 9700 Basil Court address in their motion; and, furthermore, that the circuit court did not err in mailing the order of default to the 9700 address.

Were we to adopt the view that the consent to withdraw exhibit constituted a "paper" under the Maryland Rules, we would place an undue and unreasonable burden on both the circuit court and other parties by requiring them to sift through all exhibits attached to motions or other papers in search of an indication that a party's mailing address has changed. Such a burden would be particularly onerous in cases, such as this one, in which motions containing multiple and lengthy exhibits have been filed. Because neither Maryland case law nor the relevant provisions of the Rule support Smith–Myers, we decline to impose such a burden on courts and litigants. There is, moreover, a separate basis for our decision.

Even if we were to deem the certificate of service and/or the consent to withdraw as a "paper" that established 9200 Basil Court as Smith–Myers's last known address, it remains clear to us that Smith–Myers had sufficient notice so as to satisfy the notice requirements of Rule 2–613. This is because even though the order of default *may* have been

mailed to the wrong address (the record is, in fact, unclear as to where the notices and the order ultimately ended up), Smith–Myers concedes that it still had actual notice through Callihan of the order of default and the hearing on damages.[13] Despite this actual notice, Smith–Myers did not move to vacate the order of default, and did not attend the hearing. In our view, actual knowledge of the order of default and, moreover, the hearing on damages, satisfies the underlying purposes of the notice requirements of Rule 2–613—to inform the defendant that the notice of default had been entered and allow the defendant an opportunity to defend itself in the proceeding. *See* Rule 2–613(c) ("[T]he clerk shall issue a notice informing the defendant that the order of default has been entered and that the defendant may move to vacate the order within 30 days of its entry."). *See also Maryland Rules Commentary*, Paul V. Niemeyer & Linda M. Schuett 518 (3rd. Ed.2003) ("The notice provided by this section advises the defendant for a second time of the existence of the action and of the necessity to take steps to protect against the entry of a judgment."). With actual knowledge of the proceedings, Smith–Myers can ignore developments in the suit against it only at its peril.

## II.

### The Motion to Vacate the Default Judgment

Alternatively, Smith–Myers argues that the circuit court "abused its discretion by refusing to vacate the default judgment entered against [Smith–Myers] where [it] articulated both a meritorious defense to the claim as well as an equitable

---

**13.** The docket entries, as well as the record, also accurately state the dates and times for the status hearings, that the order of default was entered, and that a hearing had been set to determine damages. These observations should have, likewise, put Smith–Myers on notice of the proceedings in this case. *See Estime,* 196 Md.App. at 304, 9 A.3d 148 ("It is the responsibility of attorneys, and by extension pro se litigants, to monitor dockets for when pleadings and other documents are filed."); *Henderson v. Jackson,* 77 Md.App. 393, 397 n. 6, 550 A.2d 713 (1988) ("[C]ounsel is responsible for the contents of the court file. . . .").

reason to excuse the failure to plead." It further asserts that, because the default judgment was not a final judgment as to all parties, the court had plenary revisory authority as to the judgment. Appellees do not directly respond to Smith–Myers's latter argument in their brief. However, because appellees asserted in the proceedings before the circuit court that the court's revisory authority was subject to the limitations found in Rule 2–613(g) and, therefore, Rule 2–535(b)–(d), we will address this issue for the benefit of the parties. We will take Smith–Myers's contentions in reverse order.

### 1. The Revisory Power

The facts of the instant case sit at the intersection of three Maryland Rules—Rule 2–613(g), Rule 2–535, and Rule 2–602(a). We first set forth the pertinent parts of these rules. Rule 2–613(g) provides that:

(g) **Finality.** A default judgment entered in compliance with this Rule is not subject to the revisory power under Rule 2–535(a) except as to the relief granted.

Rule 2–535, in turn, provides that:

(a) **Generally.** On motion of any party filed within 30 days after entry of judgment, the court may exercise revisory power and control over the judgment and, if the action was tried before the court, may take any action that it could have taken under Rule 2–534. A motion filed after the announcement or signing by the trial court of a judgment or the return of a verdict but before entry of the judgment on the docket shall be treated as filed on the same day as, but after, the entry on the docket.

(b) **Fraud, mistake, irregularity.** On motion of any party filed at any time, the court may exercise revisory power and control over the judgment in case of fraud, mistake, or irregularity.

(c) **Newly-discovered evidence.** On motion of any party filed within 30 days after entry of judgment, the court may grant a new trial on the ground of newly-discovered evi-

dence that could not have been discovered by due diligence in time to move for a new trial pursuant to Rule 2–533.

(d) **Clerical mistakes.** Clerical mistakes in judgments, orders, or other parts of the record may be corrected by the court at any time on its own initiative, or on motion of any party after such notice, if any, as the court orders. During the pendency of an appeal, such mistakes may be so corrected before the appeal is docketed by the appellate court, and thereafter with leave of the appellate court.

Finally, Rule 2–602(a) provides that:

(a) **Generally.** Except as provided in section (b) of this Rule, an order or other form of decision, however designated, that adjudicates fewer than all of the claims in an action (whether raised by original claim, counterclaim, cross-claim, or third-party claim), or that adjudicates less than an entire claim, or that adjudicates the rights and liabilities of fewer than all the parties to the action:

(1) is not a final judgment;

(2) does not terminate the action as to any of the claims or any of the parties; and

(3) is subject to revision at any time before the entry of a judgment that adjudicates all of the claims by and against all of the parties.

 Here, it is clear that the default judgment "adjudicated the rights and liabilities of fewer than all the parties to [the] action." This is because the default judgment issued against Smith–Myers did not resolve the claims against the remaining defendants. *See Quartertime Video & Vending Corp. v. Hanna,* 321 Md. 59, 64, 580 A.2d 1073 (1990). Therefore, the default judgment "remained subject to revision at any time prior to the entry of an order adjudicating the claims against all of the parties to the action." *Id.* at 65, 580 A.2d 1073. For these reasons, the circuit court's revisory discretion as to the default judgment in this matter was not confined by the restrictions found in Rules 2–613(g) or 2–535. *Id.; Bliss v. Wiatrowski,* 125 Md.App. 258, 266–67, 724 A.2d 1264 (1999).

### 2. Motion To Vacate the Default Judgment

Smith–Myers asserts that it articulated "both a meritorious defense to the [appellees'] claim as well as an equitable reason to excuse the failure to plead" in its motion to vacate the default judgment and/or its motion to reconsider.[14] Because the circuit court's revisory discretion as to the default judgment was not confined by either Rule 2–535 or 2–613(g), Rule 2–613(e) governs the determination of whether Smith–Myers's motion should have been granted. Pursuant to Rule 2–613(e), "If the court finds that there is a substantial and sufficient basis for an actual controversy as to the merits of the action *and* that it is *equitable* to excuse the failure to plead, the court *shall* vacate the order." (Emphasis added). Thus, if there is an actual controversy and an equitable basis for the vacation of the default judgment, then, as a matter of law, the judgment shall be vacated.

Smith–Myers met the first requirement through the allegation in Jeffrey Smith's affidavit that "Smith–Myers did not authorize, condone or know about any of the purported actions of [Lawson]"—which was attached as an exhibit to the motion to vacate default judgment, and repeated in the body of its opposition to the response and its motion to reconsider.[15] We conclude, however, that Smith–Myers failed to establish an equitable excuse for its failure to plead, and that, therefore, the circuit court did not err in denying its motion.

In its motion, Smith–Myers blamed its failure to vacate the order of default and its failure to appear at the hearing on damages on Peter Maignan, an erstwhile Maryland attorney

---

**14.** Because Smith–Myers repeated in its motion to reconsider the arguments it first espoused in its motion to vacate default judgment, we will treat these motions as the same motion for purposes of our analysis.

**15.** In their response to the motion to vacate, appellees presented an affidavit of Lawson which stated that her actions were taken in the course of her employment and "under the direction of, and with the full knowledge of, Jeffrey Smith." The affidavit made it clear that there was a dispute between the parties but did not pertain to the issues raised by the motion to vacate.

who was indefinitely suspended from practice at the time.[16] According to Smith–Myers, it retained Maignan to represent them in the instant case at its commencement. However, unbeknownst to it, Maignan had been indefinitely suspended or disbarred from the practice of law in Maryland. Although Smith–Myers knew that Callihan, and then Burch, had withdrawn appearances in the case, it asserted that it believed that both Callihan and Burch had worked for Maignan, and that Maignan was its attorney of record. In his affidavit, Smith asserts that, "I was misled by Mr. Maignan who reassured me that he would be present for all the court proceedings and never made any indication that he was unable to practice law in the State of Maryland."

In support of this position, Smith–Myers attached several exhibits. These exhibits included 1) a list of monies allegedly paid to Maignan, including unverified/unauthenticated copies of checks written out to Maignan, dating from January 2008 to September 2008, 2) a March 30, 2009 email allegedly sent to Smith–Myers by Maignan,[17] and 3) a Client Representation and Fee Agreement between itself and Callihan. This agreement states, in part:

Client [Smith–Myers] hereby Represents and warrants to HAC [Herbert A. Callihan, L.L.C.] that;

a) Client is free to engage HAC, and that Client is not at this time obligated or has employed by any other Lawyer

---

16. *See Attorney Grievance Comm'n v. Maignan,* 390 Md. 287, 888 A.2d 344 (2005) (*"Maignan I "*) and *Attorney Grievance Comm'n v. Maignan,* 402 Md. 39, 935 A.2d 409 (2007) (*"Maignan II "*). In *Maignan I,* Maignan was indefinitely suspended from the practice of law; in *Maignan II,* the Court continued the suspension. Maignan was later disbarred and one of the grounds for the decision of the Court of Appeals was his role in this litigation. *See Attorney Grievance Comm'n v. Maignan,* 423 Md. 191, 197–98, 31 A.3d 467 (2011).

17. This email stated, in its entirety:
Dear Jeff [Smith]:
Can you please email me the case number of that case where the judgment was improperly issued against you so that I can file the motion to vacate[?]
Peter R. Maignan

and HAC has obtained the services of Peter R. Maignan and/or his associates to be in the Court for all proceedings;

\* \* \*

It is understood and agreed that HAC may employ Associate Counsel if deemed necessary and desirable which shall be at the discretion and sole expense of the HAC.

This agreement does not state, as Smith–Myers contends, that Maignan agreed to represent them in the instant matter but rather that Maignan would "be in the Court" in an undefined capacity. The retainer agreement's provision that HAC may employ "Associate Counsel" further suggests that Maignan was not intended to act in an attorney capacity under the agreement.

Nonetheless, giving Smith–Myers the benefit of the doubt, we will assume that Smith–Myers was informed by Maignan that he would represent it and that Smith–Myers relied on Maignan's statement. However, as the litigation unfolded, this reliance clearly became unreasonable because the circuit court's May 19, 2008 order striking Burch's appearance informed Smith–Myers that "as a Corporation they must be represented by a Maryland attorney." In the approximately ten months from the time Burch withdrew his appearance until the date of the entry of the order of default, Smith–Myers did nothing to assure itself that it had counsel. Moreover, even after Smith–Myers was informed of the entry of the order of default by Callihan, it did nothing more than continue to rely on Maignan, even though Maignan had been delinquent in his purported representation for more than ten months.

Furthermore, in an affidavit filed in support of appellees' opposition to Smith–Myers's motion to vacate, Burch stated that he "advised [Smith–Myers] prior to the time of our withdrawal from representation from this proceeding that Peter Maignan was not licensed to practice law in the State of Maryland." Smith–Myers concedes this is correct.[18]

---

18. In reference to Burch's advisement, Smith stated in his affidavit that (numbering removed):

When we consider the relevant assertions in Smith–Myers's motion to vacate and consider them in the context of the orders entered in this case and the undisputed facts asserted by appellees, we are drawn ineluctably to the following conclusions. Smith–Myers knew for months that it was not represented by counsel and that Maignan—whatever his promises to Smith–Myers might have been—was not representing it. After Burch's withdrawal, Smith–Myers was advised by both the circuit court and Burch that it had to retain new counsel. It had more than ample opportunity to do so. Moreover, its reliance on Maignan was unreasonable in light of his inaction and Burch's warning that Maignan was suspended or disbarred. Finally, when it received notice of the order of default from Callihan, it did nothing other than to contact Maignan.

The default judgment procedure is " 'a means of relief against the delay and neglect of defendants.' " *Glass v. Glass,* 284 Md. at 172, 395 A.2d 485. This case presents a clear picture of sustained, systematic and inexcusable neglect on the part of Smith–Myers with consequent delay and prejudice to appellees and disruption to the orderly administration of justice in the circuit court. Because Smith–Myers did not establish an "equitable [basis] to excuse the failure to plead," Rule 2–613(e), the circuit court did not err in denying the motion to vacate. By the same token, the circuit court did not abuse its discretion in denying Smith–Myers's motion for reconsideration.

---

Mr. Larry Burch did inform me that Mr. Maignan had been disbarred; however, when I questioned Mr. Maignan regarding his disbarment he said that he had never been disbarred, only suspended and that he had been reinstated. Further, Mr. Maignan stated that the only reason why Mr. Burch was saying that he had been disbarred was in an attempt to keep me as a client. I accepted Mr. Maignan's representations and allowed him to proceed with handling my case.

I was misled by Mr. Maignan who reassured me that he would be present for all the court proceedings and never made any indication that he was unable to practice law in the State of Maryland.

524

THE JUDGMENT OF THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY IS AFFIRMED. APPELLANT TO PAY COSTS.